**UNITED STATES, Appellee,**

v.

**William B. OWEN, Specialist Four U.S. Army, Appellant.**

No. 53,607.
CM 446261.

U.S. Court of Military Appeals.

Aug. 31, 1987.

For Appellant: *Captain John J. Rayn* (argued); *Colonel Brooks B. La Grua, Lieutenant Colonel Arthur L. Hunt, Major Jerry W. Peace* (on brief).

For Appellee: *Captain Samuel J. Rob* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Gary F. Roberson* (on brief); *Colonel Norman G. Cooper.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by general court-martial composed of officer and enlisted members on charges alleging assault with intent to commit rape and forceful sodomy. Contrary to his pleas, he was convicted of indecent assault and forceful sodomy, in violation of Articles 134 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 925, respectively. He was sentenced to a bad-conduct discharge and reduction to the lowest enlisted grade. The sentence was approved by the convening authority, and the findings and sentence were affirmed by the Court of Military Review. We granted review of the following issues:

I

WHETHER THE MILITARY JUDGE ERRED BY EXCLUDING EXTRINSIC EVIDENCE OF THE VICTIM'S PAST FALSE ACCUSATIONS.

II

WHETHER THE COURT ERRED IN HOLDING IT LACKED DISCRETION TO ORDER A PSYCHIATRIC EXAMINATION OF THE ALLEGED VICTIM.

Issue I is premised on the defense theory that the complainant, Private Petersen, either intentionally lied about the offenses with which appellant had been charged and

convicted or she suffered some psychological problem which impelled her to fabricate stories of romantic/sexual overtures made towards her by men. The latter stems from the fact that Private Petersen had, on at least three previous occasions, either made or had been involved in such complaints against members of the opposite sex. While these incidents were never totally substantiated, they also were never proven false. Indeed, in one instance involving a commissioned officer, corroboration was received of an association between Petersen and the officer from another individual who had seen the two "fraternizing" during off-duty hours.

Trial counsel moved *in limine* to prohibit the defense from calling the officer in question as a witness.[1] Defense counsel contended that the officer's testimony was important to challenge Private Petersen's credibility and, thus, the veracity of the charges against appellant. The judge ruled against calling the officer and precluded any reference to a report Private Petersen had made to military police concerning an incident with the unidentified black male. However, without objection from the Government, defense counsel was permitted to call to the stand Master Sergeant Higgins, who had been Petersen's first sergeant about 1 year before the date of trial and whose testimony concerned allegations of misconduct made against him by Petersen.

Private Petersen was cross-examined about the incidents involving Sergeant Higgins and the officer. Consequently, the only evidence not admitted and, hence, still in issue is the officer's testimony and the military police report pertaining to the unidentified black male.

At trial, both appellant and Private Petersen testified about what happened on October 9, 1983. However, their respective accounts differed greatly. In essence, what started out as a friendly ride in the country turned into a series of events which ultimately resulted in the charges against appellant.

Mil.R.Evid. 608(b), Manual for Courts-Martial, United States, 1969 (Revised edition), provides:

> *Specific instances of conduct.* Specific instances of conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the military judge, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning character of the witness for truthfulness or untruthfulness.

(Emphasis added.)

On the other hand, Mil.R.Evid. 608(c) provides:

> *Evidence of bias.* Bias, prejudice, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness *or by evidence otherwise adduced.*

(Emphasis added.) The drafters of the rule make it plain "that extrinsic evidence may be used to show" "this form of impeachment." Drafter's analysis, page A18–88, Manual, *supra.* Apparently "evidence otherwise adduced" was consciously intended to include extrinsic evidence. Finally, Mil. R.Evid. 404(b) permits use of "[e]vidence of other ... acts ... for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Our first question here is, what purpose would have been served by admitting the officer's testimony or the military police report? Looking at the record, it is difficult to determine what defense counsel had in mind. Without invoking any specific rule of evidence, counsel made these various arguments:

---

1. *See United States v. Rivera,* 24 M.J. 156, 159 (C.M.A. 1987), for my views on the prosecution's use of "preemptive strikes."

[I]t's obviously relevant that she has made complaints before. Apparently anybody who attempts to go out with her or do something with her they wind up in court or with a complaint against them.

\* \* \* \* \* \*

[T]he fact that she has made allegations in this realm before I think it's significant.

\* \* \* \* \* \*

He [the officer] said that he was at home that night, he wasn't there at all. So, for impeachment, if nothing else.

Though "the substance of the evidence" seems to have been clear enough, its relevance was less so. *See* Mil.R.Evid. 103(a)(2) and 401–04.

In the first place, the defense hoped to buttress its basic theory by establishing that, because Petersen had made *false* accusations against other men, she was capable of making false accusations against appellant. The significance of these prior complaints, then, depended on showing that they were indeed false—a proposition far from established, in our estimation, even through proffer.

■ Assuming, *arguendo*, that some inference of falsity in these complaints was raised (apparently in that they did not culminate in successful prosecutions), what did it prove? Our review of the record suggests at least two possibilities.

(1) That the evidence was offered to show that Petersen was not worthy of belief. If so, the judge acted correctly in excluding it. Mil.R.Evid. 608(b).

(2) That the evidence was offered to show Petersen's general bias or motive to misrepresent (no hint of such theory was voiced by the defense). If this is the case, under Mil.R.Evid. 404(b) or 608(c), the evidence might have been admissible.[2] *See*

*United States v. Banker,* 15 M.J. 207, 212 (C.M.A. 1983); Drafters' Analysis, page A18–88, Manual, *supra;* S. Salzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* (hereinafter Salzburg) 519–20 (1986).

■ However, even if the evidence had been relevant under Mil.R.Evid. 404(b) or 608(c), the military judge was correct in excluding it as being too collateral under Mil.R.Evid. 403, which provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighted by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

As trial counsel aptly pointed out, if the officer had testified, his testimony would have amounted to a pointless diversion and established nothing. Instead, there would have been "a small trial within a trial," and the military judge was correct in cutting off this tangent. *See* Salzburg, *supra* at 518 ("The drafters were concerned that the introduction of extrinsic evidence would cause confusion and tend to distract the court members.").

■ In any event, Petersen testified on cross-examination that her roommate actually made the complaint against the officer; that an investigation had been conducted; and that the brigade commander "had just said that he was going to drop the charges and put it away in the files and we were all going to forget about it." No conceivable prejudice accrued to appellant from the absence of the officer's testimony.

■ The military judge also was correct when he ruled against admission of the report filed by Petersen with the military police about the unidentified black male on

---

2. To a considerable extent, Mil.R.Evid. 608(c) appears to swallow Mil.R.Evid. 608(b). If extrinsic evidence of conduct is offered to attack the *credibility* of a witness, it is ostensibly inadmissible under 608(b). However, if the same extrinsic evidence is offered to show that the witness is *biased,* etc., it is admissible under

608(c). And to complete the loop, showing bias is one of the chief ways in which to attack a witness' credibility. Presumably, the same result obtains under Mil.R.Evid. 404(b) if the other conduct is probative of motive. *United States v. Saipaia,* 24 M.J. 172 (C.M.A. 1987).

the grounds of irrelevance. Even defense counsel conceded: "I don't think that there is any way to verify whether it was false or not, Your Honor."

## Issue II

During an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session, the defense moved to have Private Petersen examined by a psychiatrist, contending that she had a history of "extensive antisocial and unusual behavior patterns," that these prior complaints were all "unfounded," and that they evidenced a "pronounced" pattern of "severe psychiatric problems." Defense counsel sought to prove this allegedly bizarre behavior through cross-examination of complainant and introduction of extrinsic evidence of the prior incidents.

The military judge initially questioned his own authority to order an individual to undergo a psychiatric examination, but he did not decide the motion on the basis that he lacked authority. Instead, he stated that "[a]t this point, I see nothing that requires me to take the extraordinary measure to compel a psychiatric examination. So, at this time, the motion is denied."

 Whether a military judge can order the alleged victim to undergo a psychiatric examination in a sexual assault/abuse case is a novel question and is not one that is easily resolved.[3] Positions have been taken at both extremes of the question. Wigmore contends that *"[n]o judge should ever let a sex offense charge go to the jury unless the female complainant's social history and mental makeup have been examined and testified to by a qualified physician."* [4] However, this statement has been criticized and rejected. The notion that psychiatric "examinations should be routinely ordered in rape cases, [citation omitted] ..... is based on outmoded notions of the instability and duplicity of women in general and, as such, should be discarded altogether." *State v. Romero,*

94 N.M. 22, 606 P.2d 1116, 1121 (1980); *see also People v. Souvenir,* 83 Misc. 2d 1038, 373 N.Y.S.2d 824 (N.Y. Crim.Ct. 1975). The vast majority of jurisdictions have adopted the more pragmatic rule "that the decision to order ... [a psychiatric] examination [of the complainant-witness] is 'entrusted to the sound discretion of the trial judge in light of the particular facts.'" *United States v. Riley,* 657 F.2d 1377, 1387 (8th Cir. 1981), *quoting Government of the Virgin Islands v. Scuito,* 623 F.2d 869, 875 (3d Cir. 1980), and *United States v. Benn,* 476 F.2d 1127, 1131 (D.C. Cir. 1972); *see also* Annot., 18 A.L.R. 3d 1433 (1968).

We reject Wigmore's suggestion and, instead, agree with many other jurisdictions that the rule is "completely unrealistic and unsound." *State v. Looney,* 294 N.C. 1, 240 S.E.2d 612, 622 (1978). *See also United States v. Benn, supra* at 1131, where it states:

> [A]ny such rigid rule is precluded by countervailing considerations. For example, a psychiatric examination may seriously impinge on a witness' right to privacy; the trauma that attends the role of complainant to sex offense charges is sharply increased by the indignity of a psychiatric examination; the examination itself could serve as a tool of harassment; and the impact of all these considerations may well deter the victim of such a crime from lodging any complaint at all.

Indeed, the rationale behind the adoption of Mil.R.Evid. 412 was "to exclusively control the use of character and conduct evidence of the victim in sexual offense prosecutions." The rule was designed to curtail abuse of witnesses. Salzburg, *supra* at 402–03.

 The matter is further complicated in the military by practical problems of implementing a decision to compel the psychiatric examination of a complainant-witness. Article 47, UCMJ, 10 U.S.C. § 847, provides

---

3. *See* Annot., 18 A.L.R.3d 1433 (1968).

4. 3A J. Wigmore, Evidence § 924a at 737 (Chadbourn rev. 1970) *(citing, inter alia, Ballard v.* *Superior Court,* 64 Cal.2d 159, 49 Cal.Rptr. 302, 410 P.2d 838 (Cal. 1966), for a full discussion of the quoted language).

a procedure for prosecuting a civilian/nonmilitary person who refuses or fails to appear as a witness, but it is silent as to the refusal of a witness to submit to a physical or psychiatric examination. *Cf. United States v. Hinton*, 21 M.J. 267 (C.M.A. 1986). Article 48, UCMJ, 10 U.S.C. § 848, provides for contempt powers, but they are limited to misdeeds such as menacing words, signs or gestures, or disturbance of the proceedings.

If the victim is a servicemember, as here, the situation may be somewhat different. However, the examination of soldiers or their dependents for psychiatric disorders is governed by Army Regulation 600–20, which establishes rigid standards to be followed for examinations conducted against the will of the patient. Paragraph 5–25 sets out the circumstances under which servicemembers can be compelled to undergo examinations. Paragraph 5–26 prescribes elaborate procedures for protecting the servicemember who is to be compelled to be examined against his or her will. Importantly, paragraph 5–25b provides:

> Nothing in this section limits the authority of appropriate officials to order the performance of medical procedures for the purpose of obtaining evidence without the consent of the individual concerned, and without board action under paragraph 5–30, in cases *where such are authorized under other regulations or the Military Rules of Evidence, Manual for Courts-Martial.*

(Emphasis added.)

No such authorization is cited for compelling victims/ witnesses to undergo psychological examinations in sex cases. Without statutory or regulatory authority, it is doubtful that either a civilian or military physician would examine a patient without the patient's consent. We are therefore convinced that the military judge does not have the "inherent power" to compel a victim/witness to undergo a nonconsensual psychiatric or physical examination, and we do not distinguish between male and female victims in so holding.

That does not mean, however, that the military judge is without leverage to protect an accused against the concerns that Wigmore [5]/ describes as

> the behavior of errant young girls and women [or boys and men as we have seen in various forms in courts-martial] coming before the courts in all sorts of cases. Their psychic complexes are multifarious, distorted partly by inherent defects, partly by diseased derangements or abnormal instincts, partly by bad social environment, partly by temporary physiological or emotional conditions. One form taken by the complexes is that of contriving false charges of sexual offenses by men.

We might suggest several ways in which a military judge might protect the interests of an accused, and the list is by no means exclusive.

First, the judge can use the persuasive powers of his office and that of the trial counsel to secure the witness' consent. It is a delicate matter to be sure, but the witness may well consent if he or she is convinced that the judge is seeking to do justice and not to embarrass or harass him or her.

Second, a well-prepared defense counsel can often develop sufficient information based upon cross-examination and extrinsic evidence to obtain the opinion of an expert psychiatrist. Mil.R.Evid. 702–706 certainly envision such testimony in the appropriate case. Mil.R.Evid. 412 gives the military judge sufficient latitude to permit proof of the behavior giving rise to the expert opinion. *E.g., United States v. Colon-Angueira*, 16 M.J. 20 (C.M.A. 1983); *United States v. Dorsey*, 16 M.J. 1 (C.M.A. 1983).

Third, in extreme cases the judge could strike the witness' testimony, particularly where there is absolutely nothing to corroborate the allegations.

Therefore, in that unique case where the military judge is convinced that justice cannot be served without a full exploration of

5. *Wigmore, supra,* at 736.

the psychological make-up of the complaining witness, he has the inherent power to vindicate the rights of the accused. *See United States v. Zayas*, 24 M.J. 132, 137 (C.M.A. 1987) (Cox, J., dissenting on other grounds); *United States v. Eshalomi*, 23 M.J. 12, 28 (C.M.A. 1986) (Cox, J., concurring). We repose faith and trust that military judges will carry out their duty in this regard:

> [I]mplicit in the congressional scheme embodied in the Code is the view that the military court system generally is adequate to and responsibly will perform its assigned task. .... [A]nd ... it must be assumed that the military court system will vindicate servicemen's constitutional rights.

*Schlesinger v. Councilman*, 420 U.S. 738, 758, 95 S.Ct. 1300, 1313, 43 L.Ed.2d 591 (1975).

■ Turning to the facts of this case, the military judge correctly concluded that he would not order the complaining victim to undergo a psychiatric examination.[6] Further, the facts and circumstances presented to the military judge clearly reflect that the victim had no history of psychiatric problems, and no such examination had ever been performed. The judge also made an affirmative finding, which is supported by the record, that, even assuming he possessed the power to order an individual to undergo a psychiatric examination, the facts and circumstances of this case did not warrant such action. We agree and

find no error prejudicial to the rights of the accused.

The decision of the United States Army Court of Military Review is affirmed.

SULLIVAN, Judge (concurring):

I agree with Judge Cox except to the extent that his opinion might be construed as undermining the decision of this Court in *United States v. Zayas,* 24 M.J. 132 (C.M.A. 1987).

EVERETT, Chief Judge (concurring in the result):

In my view, a military judge has inherent authority to direct the physical or psychiatric examination of an alleged victim, if the judge concludes that this is required by the interests of justice. The judge's order for the examination provides an adequate basis for military authorities to perform it themselves or to have the examination performed by civilian doctors. If the alleged victim declines to submit to the examination or to cooperate therein, then the military judge may allow cross-examination of the alleged victim or defense comment in regard thereto; or he may simply refuse to let the witness testify.

I concur in the result here because the military judge stated that, even if he possessed the power to order a psychiatric examination, he did not find such action to be warranted in the present case.

---

**6.** Chief Judge Everett would authorize the military judge "to direct the physical or psychiatric examination of an alleged victim," 24 M.J. at 396, and I am sympathetic to that view. But he provides no legal vehicle for the judge to enforce his order. Indeed, he finally reaches the same result I do, that the ultimate remedy is to refuse to let the witness testify. The reason I don't call this "inherent power" to compel a witness to undergo an examination is that, unless one has the ability to enforce his orders by requiring compliance therewith, then what he is doing is something less than issuing an order. I choose to call that "leverage."