UNITED STATES, Appellee

v.

John A. ANDERSON, Jr., Staff Sergeant
U.S. Air Force, Appellant

No. 00-0518

Crim. App. No. 33456

United States Court of Appeals for the Armed Forces

Argued January 10, 2001

Decided June 29, 2001

GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and EFFRON and BAKER, JJ., joined.
SULLIVAN, J., filed a dissenting opinion.

Counsel

For Appellant:  Marcus J. Williams (argued); Colonel James R.
Wise, Lieutenant Colonel Timothy W. Murphy, and Captain Karen
L. Hecker (on brief); Captain Michael J. Apol.

For Appellee:  Captain Christa S. Cothrel (argued); Colonel
Anthony P. Dattilo and Major Lance B. Sigmon (on brief);
Lieutenant Colonel Ronald A. Rodgers, Major Mitchel Neurock,
and Captain James C. Fraser.

Military Judge:  Michael J. Rollinger


**This opinion is subject to editorial correction before publication.**

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of committing indecent acts with his 13-year-old daughter (2 specifications), in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934.  In addition, he was acquitted of two specifications alleging that he attempted to rape his daughter, in violation of Article 80, UCMJ, 10 USC § 880, and one specification alleging that he raped his daughter, in violation of Article 120, UCMJ, 10 USC § 920, but he was found guilty of committing indecent acts in violation of Article 134, as lesser-included offenses of the two attempted rapes and the rape.  The adjudged and approved sentence provides for a dishonorable discharge, confinement for 9 years, and reduction to the lowest enlisted grade.  Automatic forfeitures were waived for 6 months in accordance with Article 58b, UCMJ, 10 USC § 858b.  The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review of the following issue:

WHETHER APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE:  (1) DEFENSE COUNSEL FAILED TO INVESTIGATE HIS CASE AND ADEQUATELY PRESENT HIS DEFENSE AT TRIAL, AND (2) DEFENSE COUNSEL REPEATEDLY CONCEDED HIS GUILT TO THE COURT.

For the reasons set out below, we remand the case for further proceedings.

## Factual Background

At the time of trial, appellant was a married, 34-year-old staff sergeant with four children: a 13-year-old daughter, BJA, two 11-year-old boys, and a 6-year-old boy.  In April 1998,

while on a church-sponsored trip to Mexico, BJA told a church official that appellant had been touching her inappropriately. The church official suggested that BJA attend a church workshop on forgiveness. BJA attended the workshop and then talked to a church counselor. After BJA returned to her home at McChord Air Force Base, Washington, the church pastor reported BJA's accusations to her mother. BJA was then interviewed by an agent of the Office of Special Investigations (OSI). She told the OSI agent that several times a year for about 3 years, appellant touched her inappropriately. At trial, she testified that appellant touched her much more frequently than she first reported, two or three times a week, and that he forced her to touch his genitals. She also testified that on two occasions, appellant attempted to have intercourse with her, and that on one occasion, he penetrated her.

BJA admitted that she initially did not tell the OSI everything because she "didn't think they needed to know any more." She hoped that appellant "would admit that he did it and get help." At trial, she admitted testifying during the Article 32[*] investigation that she did not remember the "three rapes" until 3 weeks before the Article 32 hearing. She testified at the Article 32 hearing that she "started having bad dreams about it" and then "started remembering more stuff that happened."

The defense attempted to show that BJA's accusations were intended to "get even" with appellant because he refused to allow her to date a 16-year-old boy. BJA denied telling her brother

---

[*] Uniform Code of Military Justice, 10 USC § 832.

that she would "get even" with appellant.  BJA's mother denied telling a neighbor, Sergeant First Class (SFC) Martin Boylan, that BJA had threatened to "get even" with appellant.

Appellant testified at trial and denied all the allegations. His testimony consisted solely of "No, Sir" responses to a brief series of leading, factual questions from his defense counsel. During closing arguments on the merits, defense counsel paraphrased a quotation from Sophocles as follows: "[T]here is a point beyond when even justice becomes unjust.  And to find Staff Sergeant John A. Anderson, Jr., guilty under the facts and circumstances of this case would amount to just such a point." During his sentencing argument, defense counsel asked the rhetorical question, "Can this person rehabilitate? . . . [Y]es, John Anderson can rehabilitate. . . . His offenses are only very recent."

The defense was assisted at trial by Dr. Bruce Ebert, a board-certified, clinical and forensic psychologist and a lawyer licensed to practice in California.  Dr. Ebert advised the defense on trial tactics and observed the testimony of BJA at trial.

Before the court below and now this Court, appellant contends that his trial defense counsel were ineffective.  Among his allegations, appellant states that 4 months before the trial, he told his counsel that BJA told her brother she was going to "get" appellant, but that his counsel never discussed this matter with him again.  The court below admitted an affidavit from SFC Boylan, appellant's former neighbor who had since retired from active duty, stating that Mrs. Anderson told him BJA threatened

4

to "get" appellant because he would not allow her to see her boyfriend. SFC Boylan also stated that he told appellant's defense counsel about Mrs. Anderson's comment and volunteered to testify about it, but he was never asked to testify.

The court below also admitted an affidavit from Dr. Ebert, in which he stated that the church group to which BJA first complained "has been described as extremely fundamentalist and charismatic to such a degree as to have similarities with a cult." Dr. Ebert stated that he suspected "the counselor used some quasi-hypnotic techniques" that caused BJA to make her complaints. Dr. Ebert believed that further investigation of these techniques, as well as the circumstances of BJA's complaint, was warranted.

Dr. Ebert stated that "it was critically important for [him] to conduct an interview with [BJA]," but "[a]pparently, she refused to speak to [him] or with any member of the defense." He opined that "[a] psychological examination of [BJA] by an independent expert such as [Dr. Ebert] may have been extremely valuable[.]"

After receiving Dr. Ebert's affidavit, the court below ordered Captains (Capts) Hockaday and Davis, appellant's trial defense counsel, to respond. In his affidavit, Capt Hockaday stated:

> Although Dr. Ebert states in his affidavit that he believed that BJA refused to speak with him or any member of the defense, we told Dr. Ebert of the results of our interview with her the week before the trial. In any event, Dr. Ebert was also told of the difficulty we had experienced in obtaining an interview with BJA, and that she had been made available for interviews only after the possibility of a subpoena was raised.

> . . . . At no time did Dr. Ebert advise us that he should personally interview BJA, perform a psychological evaluation of BJA, personally interview the church counselor or investigate the church further. Dr. Ebert advised that he should not be called as a witness. Had Dr. Ebert provided the advice he discusses in his affidavit, we would have taken steps to follow that advice.

Capt Davis's affidavit stated that he and Capt Hockaday interviewed BJA's brother on August 20, 1998, 4 days before trial, but that the brother did not support appellant's claim that BJA threatened to "get" him. Capt Davis also asserted that "the defense was not authorized to compel a psychological examination of BJA" because the prosecution did not intend to put BJA's mental state in issue. Regarding the importance of having a psychological examination of BJA, Capt Davis stated:

> Dr. Ebert informed us that his review of the information forwarded to him revealed no evidence inconsistent with the allegations, except for one statement by BJA in the Article 32 report regarding remembering the alleged rape in a dream . . . . Subsequent to BJA's direct examination, defense counsel once again consulted with Dr. Ebert, since he was present during BJA's testimony on direct, to determine whether he had any strategical suggestions. He informed us that he did not believe we had any real basis to attack BJA's testimony from a psychological standpoint, and that therefore, his testimony would probably not assist our defense. At that point, we agreed with Dr. Ebert and did not pursue any possible psychological issues regarding BJA or call Dr. Ebert as a witness.

Appellant tendered a second affidavit from Dr. Ebert to the court below in response to the affidavits of Capt Hockaday and Capt Davis, but the court refused to admit Dr. Ebert's second affidavit. Appellant submitted the affidavit to this Court, and we admitted it. Dr. Ebert's second affidavit responded to Capt Hockaday's statement that Dr. Ebert did not recommend he interview BJA and perform a psychological evaluation, and did not

recommend interviewing the church counselor or investigating the church.  Dr. Ebert responded by saying Capt Hockaday's statement "is simply false."  Dr. Ebert also stated that he "specifically requested information on the alleged victim's church and the specifics of the events surrounding the alleged victim's disclosure made during her trip to Mexico."

## Discussion

Appellant contends that his counsel were ineffective because they (1) did not interview BJA's brother in a timely manner before he "forgot" about BJA's threats to retaliate against appellant or was influenced by others to change his story; (2) did not investigate the circumstances of BJA's initial accusations against appellant; (3) did not make reasonable efforts to permit Dr. Ebert to interview, test, and evaluate BJA before trial; (4) did not call SFC Boylan as a witness to contradict BJA and Mrs. Anderson; and (5) improperly conceded appellant's guilt in argument.

To prevail on a claim of ineffectiveness of counsel, an appellant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).  Counsel are presumed competent.  To overcome this presumption, an appellant must show that counsel made specific errors that were unreasonable under prevailing professional norms.  Id. at 688-90; see also United States v. Cronic, 466 U.S. 648 (1984).

In United States v. Polk, 32 MJ 150, 153 (CMA 1991), this Court adopted a three-pronged test to determine if the presumption of competence has been overcome:

(1) Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions[?]";

(2) If the allegations are true, did defense counsel's level of advocacy fall "measurably below the performance . . . [ordinarily expected] of fallible lawyers[?]"; and

(3) If defense counsel were ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

Ineffectiveness of counsel is a mixed question of law and fact. Factual findings are reviewed under a clearly-erroneous standard of review, but the ultimate determinations whether counsel were ineffective and whether their errors were prejudicial are reviewed de novo. United States v. Wean, 45 MJ 461, 463 (1997).

Appellant's first three claims are founded on the failure to investigate. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, supra at 691.

In addition, appellant's third claim involves the opportunity for Dr. Ebert to interview, test, and evaluate BJA. In United States v. Owen, 24 MJ 390, 395 (CMA 1987), this Court opined that a military judge lacks "inherent power" to compel a victim to undergo nonconsensual examination. This Court noted, however, that a military judge and a trial counsel can use "the persuasive powers of [their] office[s] . . . to secure the witness' consent" to such examination. Id.

Appellant's fourth claim concerns his counsel's failure to present the testimony of SFC Boylan. The affidavits of defense counsel did not address this issue. This Court "will not second-guess the strategic or tactical decisions made at trial by defense counsel." United States v. Morgan, 37 MJ 407, 410 (CMA 1993). "On the other hand, where it is not apparent what decisions were made or even that a strategic or tactical decision was made, further inquiry may be required." United States v. Grigoruk, 52 MJ 312, 315 (2000).

Appellant's final claim is that his counsel improperly conceded his guilt. An unequivocal concession of guilt can so undermine the adversarial process as to obviate the need for a separate showing of prejudice. United States v. Swanson, 943 F.2d 1070, 1074 (9th Cir. 1991), citing Cronic, supra. This Court discussed concessions of guilt during sentencing arguments in Wean, 45 MJ at 464, cited by appellant. In Wean, this Court opined:

> [D]efense counsel should not concede an accused's guilt during sentencing, not only because this can serve to anger the panel members, but also because defense counsel may be able to argue for reconsideration of the findings before announcement of the sentence.

Wean is of limited applicability to appellant's case, however, because it was premised on RCM 924(a), Manual for Courts-Martial, United States (1994 ed.). The version of RCM 924(a) in effect at the time of appellant's trial did not permit court members to reconsider findings after they are announced. See 45 MJ at 464 n. 4; RCM 924(a), Manual for Courts-Martial, United States (1998 & 2000 eds.).

In <u>United States v. Ginn</u>, 47 MJ 236, 248 (1997), this Court held that conflicting affidavits on an issue of ineffectiveness of counsel may not be resolved without a factfinding hearing, unless (1) the facts alleged by the appellant would not result in relief even if true; (2) the appellant does not assert specific facts but only speculative or conclusory observations; (3) the appellant's factual assertions are not contested; (4) the record as a whole "compellingly demonstrate[s]" the improbability of the facts asserted by the appellant; or (5) the appellant's factual assertions contradict statements made by the appellant on the record and the appellant does not "rationally explain why he would have made such statements at trial but not upon appeal."

### Conclusions

Applying the principles set out in <u>Ginn</u>, we conclude that a factfinding hearing is required to resolve the factual conflicts between Dr. Ebert's two affidavits and the affidavits of Capts Hockaday and Davis.

Appellant's trial defense counsel appear to concede the wisdom and necessity of investigating the circumstances of BJA's initial accusations, commenting that if Dr. Ebert had suggested it, they would have done it. The court members obviously had some concerns about BJA's credibility, acquitting appellant of the two attempted rapes and one consummated rape. We conclude that further inquiry is required to determine the adequacy of trial defense counsel's pretrial investigation of the circumstances of BJA's accusations against appellant.

The apparent conflict between SFC Boylan's affidavit and Mrs. Anderson's in-court testimony may be relevant to the defense

theory that BJA's accusations grew in response to encouragement by her mother, friends, and counselors. Defense counsel have not had an opportunity to articulate a tactical reason not to call SFC Boylan as a defense witness. Further inquiry will give them such an opportunity.

Capt Davis stated that the defense interviewed BJA's brother shortly before trial, but he did not explain why the brother was not interviewed earlier, at a time more immediate to the events in question. Further factual inquiry and an opportunity for defense counsel to explain their pretrial strategy is required.

Defense counsel's impression that they could not compel BJA to submit to psychological testing begs the question whether she would have submitted voluntarily or whether the use of "persuasive" measures by the military judge or trial counsel recognized in Owen, supra, could have produced the same result. Further inquiry is needed into the likelihood that Dr. Ebert could have interviewed and evaluated BJA and obtained evidence favorable to appellant.

Defense counsel's arguments on findings and sentence are susceptible of being interpreted as concessions, but they are not the obvious concessions of the sort that were condemned in Swanson, supra. In our view, the cumulative effect of these arguments warrants further evaluation after the factual issues are resolved.

## Decision

The decision of the United States Air Force Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to a

convening authority to conduct a factfinding hearing in accordance with United States v. DuBay, 17 USCMA 147, 37 CMR 411 (1967). The factfinding hearing should address: (1) the factual conflicts between the affidavits of Dr. Ebert and those of trial defense counsel; (2) the adequacy of trial defense counsel's pretrial investigation of the circumstances of BJA's accusations against appellant, including the delay in interviewing BJA's brother until the eve of trial; (3) the reasons for not presenting the testimony of SFC Boylan; and (4) the circumstances under which Dr. Ebert could have evaluated BJA and the potential results of such an evaluation. The record of trial, including the factfinding hearing, will then be transmitted to the Court of Criminal Appeals, which will reconsider appellant's claims of ineffective representation, including his claim that defense counsel conceded his guilt. Thereafter, Article 67, UCMJ, 10 USC § 867, will apply.

SULLIVAN, Judge (dissenting):

I agree with the decision of this Court in United States v. Ginn, 47 MJ 236 (1997). However, I do not agree that Ginn requires a remand for a Dubay hearing in this case. The majority's failure to particularly explain why the legal principles it cites and the facts it relies on justify a remand under Ginn leaves me unpersuaded that relief is warranted. Accordingly, I dissent.

Turning to the posttrial affidavits in this case, I note that there is no dispute that defense counsel did not interview the alleged victim's brother, J, until 4 days before trial. Moreover, it is not disputed that 4 months prior to trial, appellant told defense counsel that the alleged victim made certain statements to her brother. Finally, it is not disputed that the brother eventually denied knowledge of such statements by the alleged victim. However, it is utter speculation that over the 4-month period, J forgot that his sister made statements threatening to get even with appellant for not letting her date an older boy. A claim of ineffective assistance of counsel cannot rest on speculation. See United States v. Ginn, supra at 248 (Second Principle: "[I]f the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.").

United States v. Anderson, No. 00-0518/AF

I turn next to the decision of defense counsel not to call SFC Boylan to testify that the victim's mother said the victim said she wanted to get appellant for not letting her date an older boy. There is no factual dispute on this point. The evidence, however, could only be used for impeachment of the mother, who was not a witness to the charged offenses. In any event, the victim in her testimony admitted being mad at appellant because he did not permit her to date an older boy. See United States v. Ginn, supra at 248 (First Principle: "[I]f the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on this basis.").

The remaining reason the majority remands this case is because of a posttrial conflict in the affidavits of a defense expert and defense counsel. Doctor Ebert asserts that he requested defense counsel allow him to interview the alleged victim for evidence of psychological manipulation by her church or family. Defense counsel asserts that Dr. Ebert did not make such a request and ruled out such manipulation by the church where she revealed her prior abuse by appellant. Clearly, this is a factual dispute, and it might have some bearing on an

United States v. Anderson, No. 00-0518/AF

important issue in this case, i.e., the credibility of the
alleged victim. [1] However, the resolution of this dispute in
appellant's favor would not entitle appellant to relief. Even
Dr. Ebert asserts that the alleged victim's mother would not make
her available for a psychological interview by him unless
required by law to do so. See United States v. Ginn, supra at
239.

Finally, in this case, it was not ineffective assistance of
counsel for defense counsel to fail to request that trial counsel
and the trial judge urge the alleged victim to voluntarily submit
to a defense psychological examination. Cf. United States v.
Owen, 24 MJ 390, 395 (CMA 1987). There is no dispute in this
case that defense counsel did not ask these officers to urge the
victim to take such an examination. However, there is also no
dispute that the victim's mother would not allow such an
examination unless legally coerced. In my view, the law does not
require the doing of futile acts.

---

[1]  Doctor Ebert's testimony that in his opinion, the alleged
victim was being psychologically manipulated to make false
allegations against appellant might be objectionable on the basis
that he was improperly serving as a validator or human lie
detector. See United States v. Armstrong, 53 MJ 76, 80-81
(2000); cf. United States v. Wright, 53 MJ 476, 485 (2000).