# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 KEVIN J. SHAKELY**
**United States Army, Appellant**

ARMY 20140108

Headquarters, I Corps
David Conn, Military Judge
Colonel William R. Martin, Staff Judge Advocate

For Appellant:  Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Major A.G. Courie III, JA; Captain Benjamin W. Hogan, JA; Captain Carling M. Dunham, JA (on brief).

20 March 2015

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of three specifications of desertion, two specifications of making a false offical statement, and one specification of impeding an investigation in violation of Articles 85, 107 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 885, 907, 934 (2006) [hereinafter UCMJ].  The military judge sentenced appellant to a dishonorable discharge, confinement for eighteen months, reduction to the grade of E-1, and forfeiture of all pay and allowances.  Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for twelve months, reduction to the grade of E-1, and forfeiture of all pay and allowances.  The convening authority also approved the 117 days of pretrial confinement credit against the sentence to confinement.

This case is before us for review under Article 66, UCMJ. Appellant raises one assignment of error which requires discussion but no relief.

## BACKGROUND

Appellant joined the Army on 5 January 2004. After completing basic training, appellant decided he was "not a good fit" for the Army. As such, on 30 May 2004, he did not report to his assigned unit at Fort Lewis, Washington. He was dropped from the active duty rolls on 9 July 2004.

On 14 April 2006, appellant was arrested on a deserter warrant after a traffic stop in Des Moines, Iowa. He was released from confinement a few days later with a pass to return to his unit. Appellant did not return to his unit. A second deserter warrant was issued.

On 27 August 2006, appellant was arrested as a deserter a second time in Des Moines, Iowa. This time, the police turned appellant over to a military Absent Without Leave (AWOL) Apprehension Team who escorted appellant to Fort Lewis, Washington, aboard a commercial flight. Once at the Seattle airport, appellant fled from his escorts and again avoided returning to his unit.

Seven years later, in August 2013, an AWOL Apprehension Team investigator telephonically contacted appellant and asked him to return to Fort Lewis. Wanting the investigator to think he was misinformed about appellant's military duty status, appellant told the investigator he was "out of the Army and discharged."

On 23 August 2013, in a further effort to persuade an AWOL Apprehension Team into believing had been properly discharged or that he was someone else of greater rank, appellant left a message on an AWOL investigator's answering machine stating that he was "Staff Sergeant Kevin Shakely."

On 23 August 2013, a televised interview with appellant was broadcast on the local news. In an effort to dissuade the military from investigating his case and returning him to military control, appellant told the reporter he deployed to Iraq and Afghanistan and had been properly discharged. Appellant asserted a 'paperwork mix-up' was the cause of his three arrests for desertion, and declared "this is not how you treat somebody that went through what I had to go through and had to make the sacrifices I had to make." This taped interview was also placed on the Internet.

On 5 November 2013, appellant was arrested in Sacramento, California, on a deserter warrant and returned to Fort Lewis, Washington, where he was court-martialed.

2

On appeal, in a statement made under penalty of perjury, appellant asserts he received ineffective assistance when his defense counsel pressured him into pleading guilty by telling appellant he would lose the pretrial agreement if he did not plead guilty to specification 1 of Charge III.   Appellant asserts he did not make a false official statement to the investigator when he spoke to the investigator about being discharged from the Army because he believed he had been discharged.  Appellant's defense counsel filed affidavits with this court denying and contradicting appellant's claims.

## LAW AND DISCUSSION

*Ineffective Assistance of Counsel*

The Sixth Amendment guarantees an accused the right to the effective assistance of counsel.  *United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011) (citing *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001)).  To establish that his counsel was ineffective, appellant must satisfy the two-part test "both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice."  *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  We review both prongs of the *Strickland* test de novo.  *United States v. Mazza,* 67 M.J. 470, 474 (C.A.A.F. 2009) (citing *United States v. Anderson,* 55 M.J. 198, 201 (C.A.A.F. 2001); *United States v. Wiley,* 47 M.J. 158, 159 (C.A.A.F. 1997)).

As a threshold matter, because appellant and counsel filed conflicting post-trial statements, we look to whether a post-trial evidentiary hearing is required.  *Ginn*, 47 M.J. at 248.  Applying the fourth *Ginn* factor, we conclude that an evidentiary hearing is not warranted and that appellant has not met his burden of establishing ineffective assistance of counsel.  *Id*.  Assuming appellant's affidavit is factually adequate on its face, "the appellate filings and the record as a whole compellingly demonstrate the improbability of those facts" and we may therefore "discount those factual assertions and decide the legal issues." *Id.*  Additionally, after applying the fifth *Ginn* factor, we are not convinced that appellant has rationally explained the contradiction between his statements at trial and his statements in his statement made under penalty of perjury.  *Id.*

First, the material factual conflict in this case is less between competing affidavits and more between appellant's affidavit and his statements made at trial.  At every stage of the trial and during the plea colloquy, appellant noted his satisfaction with his defense counsel, his legal right to plead not guilty, and provided a factual predicate for his guilt.  We "must consider these admissions to determine whether a disputed issue of fact has been raised which requires that a *DuBay* hearing be ordered."  *Ginn*, 47 M.J. at 244.  At his court-martial, he did not

raise any allegedly coerced plea or otherwise assert his alleged complete defense to his first false official statement.

Appellant avers on appeal that he pleaded guilty to the offense only because he wanted the ordeal to be over with quickly and because his defense counsel pressured him to plead guilty despite being aware of appellant's alleged defense. However, the plea inquiry specifically covered appellant's reasons for pleading guilty and whether anybody forced him to plead guilty. Appellant stated he was not a good fit for the Army and was scared to be a servicemember. Appellant said he lied about being discharged to avoid being returned to the Army and did not want to face the consequences for his actions. *Ginn* discusses *United States v. Giardino*, 797 F.2d 30 (1st Cir. 1986), where an accused alleged his attorney lied to make him plead guilty. The First Circuit ordered an evidentiary hearing where appellant alleged he learned of his lawyer's alleged dishonesty only after the accused entered his guilty plea. 797 F.2d at 32. Here, the alleged coercion occurred before appellant entered his pleas. Appellant not only stayed silent about it at trial but also articulated facts contrary to his assertion of coercion. In our view, appellant's trial statements "compellingly demonstrate" the improbability of the facts alleged in his statement made under penalty of perjury. *Ginn*, 47 M.J. at 248.

We take note of other acts of deception by appellant which "compellingly demonstrate" the improbability of the facts alleged in appellant's affidavit. First, appellant falsely claimed to hold the rank of staff sergeant the day after he told an investigator he had been discharged from the Army. This is an uncontroverted lie. In a televised news interview, appellant falsely claimed to have been deployed to Iraq and Afghanistan to garner public sympathy or support for his pretense – that he was an honorably discharged combat veteran. Appellant's assertions aired on local news regarding his combat deployments were also completely fabricated. Lastly, by the time appellant made the false official statement at issue in 2013 regarding his purported discharge, he had already been arrested twice previously for desertion and once flown back to Seattle with escorts, where he fled the airport to avoid facing responsibility. In light of this conduct, appellant has not rationally explained why he made materially different statements at trial and on appeal. *See Ginn*, 47 M.J. at 248.

Appellant's affidavit alleges he had a complete defense to one specification of making a false official statement. However, the inquiry here is not strictly whether appellant has a defense; "[t]he question before us . . . is the competence of his defense counsel." *Ginn*, 47 M.J. at 248. Given our application of the fourth *Ginn* factor above, we are convinced appellant has not carried his burden on the first prong of *Strickland*.

4

**CONCLUSION**

Upon consideration of the entire record, the findings of guilty and the sentence as approved by the convening authority are AFFIRMED.

Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court