# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CELTNIEKS, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Major DAVID L. JERKINS**
**United States Army, Appellant**

ARMY 20140071

Headquarters, Fort Hood
Rebecca K. Connally, Military Judge
Colonel Stuart W. Risch, Staff Judge Advocate

For Appellant:  Captain Cody Cheek, JA; Mr. James S. Trieschmann, Jr., Esquire (on brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Melissa Dasgupta Smith, JA; Captain Vincent S. Scalfani, JA (on brief).

30 November 2016

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

TOZZI, Senior Judge:

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of assault consumated by battery upon a child, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 (2012) [hereinafter UCMJ].  The panel sentenced appellant to a dismissal and confinement for six months.  The convening authority approved only so much of the sentence as provided for a dismissal and confinement for five months.

This case is before us for review under Article 66, UCMJ.  Appellate defense counsel assigns six errors to this court, one of which warrants discussion but no relief.  Appellant personally raised matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) that we find, after due consideration, to be without merit.

**BACKGROUND**

On 13 May 2013, the United States Army Criminal Investigative Command (CID) and Ms. NM, an investigator with child protective services (CPS), responded to an allegation of child abuse regarding appellant's three-year-old step-son, TB. Appellant's neighbors called CID after they noticed significant bruising across TB's arms and back. TB told them appellant "beat [him] with a belt." Ms. JJ, appellant's wife, later took TB to the emergency room and he made a similar statement to the forensic nurse. Appellant was charged and convicted based on TB's allegations.

CID interviewed Ms. JJ and she told them appellant admitted to spanking her son with the belt. Ms. JJ also retrieved the leather belt appellant used to discipline the children. Appellant arrived at the house while CID and Ms. NM were investigating. Ms. NM showed appellant pictures of TB and asked if he spanked him. Appellant was not advised of his Article 31 rights. Appellant subsequently replied that he did spank TB with a belt and he described and demonstrated how he disciplined him.

At trial, the government's opening statement quoted appellant's statement to Ms. NM as follows: "I held him down by his arm, and raised my right hand, and looped the belt, and spanked him five times. He kept wiggling and pulling away." Ms. NM later testified that appellant made these statements. The government also reiterated appellant's statements in its closing argument.

The defense theory of the case was that appellant was disciplining his child. Appellant did not testify during the merits portion of the trial. The defense used appellant's statement to argue the parental discipline defense.

**LAW AND DISCUSSION**

Appellant was represented by civilian defense counsel, Ms. SK[*] and military defense counsel, Captain (CPT) CC and Major (MAJ) JM. Appellant voluntarily released CPT CC. The senior defense counsel, MAJ JM represented appellant along with Ms. SK at trial. Appellate defense counsel assert appellant received ineffective assistance at trial when his defense counsel failed to move to suppress appellant's admission to Ms. NM and that the government's use of these admissions undermines the confidence in the outcome of the case. In support of this argument, appellate defense counsel and appellant offered sworn affidavits.

Upon order from this court, Ms. SK, CPT CC, and MAJ JM individually filed sworn affidavits. While refuting claims of ineffective assistance, Ms. SK and MAJ

---

[*] Ms. SK's law partner, Mr. WJ, was also retained but Ms. SK was the lead civilian attorney.

JM attest to the fact that even if appellant's admissions were suppressed, they were aware of alternative methods for the prosecution to admit essentially the same information (i.e. testimony from TB, Ms. JJ, the neighbors, or the forensic nurse). Ms. SK explained, "the strategy was to be 'honest' with the panel and present the 'parental discipline' defense . . . ." As a result, the defense was able to use appellant's admissions and place his "favorable explanation" in front of the panel without requiring appellant to testify. Major JM further noted that allowing the statement to come in was a better strategy than having appellant testify because he "would not have made a good witness and would have been impeached by the statement" if he testified. Defense counsel also noted that appellant was fully aware of this strategy before trial as appellant was included in strategic discussions with all of the lawyers. Furthermore, Ms. SK stated, "Much discussion was had on the issue, and [appellant] was well aware and approved of the strategy."

The Sixth Amendment guarantees an accused the right to the effective assistance of counsel. *United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011) (citing *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001)). To establish that his counsel was ineffective, appellant must satisfy the two-part test, "both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "We review both prongs of the *Strickland* analysis de novo." *United States v. Mazza,* 67 M.J. 470, 474 (C.A.A.F. 2009) (citations omitted). The *Strickland* framework was adopted by the military justice system and further developed into a three-pronged test to determine whether an appellant has overcome the presumption of competence and shown prejudice:

> (1) Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions?";
>
> (2) If the allegations are true, did defense counsel's level of advocacy fall "measurably below the performance . . . [ordinarily expected] of fallible lawyers?"; and
>
> (3) If defense counsel was ineffective, is there a "reasonable probability that, absent the errors," there would have been a different result?

*United States v. Grigoruk*, 56 M.J. 304, 307 (C.A.A.F. 2002) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

"We do not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine whether counsel made an objectively reasonable choice in strategy from the available alternatives. Similarly, we must

remain mindful that counsel have wide latitude in making tactical decisions." *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (internal citations and quotation marks omitted). Our analysis of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. We are not to assess counsel's actions through the distortion of hindsight; rather we are to consider counsel's actions in light of the circumstances of the trial and under the "strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). As a general matter we "'will not second guess the strategic or tactical decisions made at trial by defense counsel.'" *United States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001) (quoting *United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993)).

It is clear from the record in this case and the sworn affidavits of appellant's counsel that they made a considered, tactical decision not to litigate a motion to suppress appellant's statement to Ms. NM. Their rationale included consideration of how such a motion would comport with their overarching trial strategy. They considered how evidence of the same nature as appellant's statement could have been introduced through other trial witnesses, and how such evidence would not have appeared favorable to appellant without his statement explaining his actions in a more favorable light. This tactical decision supported their trial strategy in focusing on the parental discipline defense. Absent extraordinary circumstances, this is exactly the type of strategic, tactical decision relevant case law instructs us not to second guess. As such, we will not do so here.

Based upon the entire record and the affidavits submitted by the parties, we find there is a reasonable explanation for defense counsel's decision not to litigate a motion to suppress appellant's statement to Ms. NM. Appellant's defense counsel made a tactical decision not to litigate a motion to suppress appellant's statement to Ms. NM only after weighing the relative merits of that course of action against its potential risks, and considering how litigation of the motion fit into their trial strategy. Appellant's trial defense team "made an objectively reasonable choice in strategy from available alternatives." *Akbar*, 74 M.J. at 379 (internal citations and quotation marks omitted). Appellant's assertion that his defense counsel provided ineffective assistance lacks merit.

**CONCLUSION**

The findings of guilty and the sentence are AFFIRMED.

Judge CELTNIEKS and Judge BURTON concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court