# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist RICARDO A. MORALES,**
**United States Army, Appellant**

ARMY 20160070

Headquarters, U.S. Army Combined Arms Center and Fort Leavenworth
J. Harper Cook, Military Judge
Lieutenant Colonel David J. Goscha, Acting Staff Judge Advocate

For Appellant: Lieutenant Colonel Todd W. Simpson, JA; Captain Rachele A. Adkins, JA (on brief).

For Appellee: Colonel Steven P. Haight, JA; Major Sandra L. Ahinga, JA; Captain KJ Harris, JA (on brief).

29 July 2019

----------------------------------
SUMMARY DISPOSITION
----------------------------------

FLEMING, Judge:

Following a rehearing on findings and sentence,[1] appellant asserts his trial defense counsel were ineffective for failing to impeach the complaining witness with a snippet of her testimony from the original trial. We disagree.

On 31 March 2018, a military judge sitting as a general court-martial at a rehearing found appellant, contrary to his pleas, guilty of one specification of sexual assault by bodily harm, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [UCMJ], and sentenced appellant to a dishonorable discharge,

---

[1] We previously determined the military judge erred in providing the members a propensity instruction (*See United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2015)), set aside the findings and sentence, and authorized a rehearing. *United States v. Morales*, ARMY 20160070, 2017 CCA LEXIS 676 (Army Ct. Crim. App. 31 Oct. 2017).

confinement for two years and four months, and a reduction to the grade of E-1. The convening authority approved the sentence, except for the reduction to the grade of E-1, and credited appellant with any portion of the punishment served from 29 January 2016 through 1 November 2017 under the sentence adjudged at the former trial.

Appellant's case is now pending review before this court pursuant to Article 66, UMCJ. Appellant asserts four assignments of error. Only one–ineffective assistance of counsel (IAC)–warrants discussion; none merit relief.

## DISCUSSION

The Sixth Amendment guarantees an accused the right to the effective assistance of counsel. *United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011) (citing *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001)). To establish that his counsel was ineffective, appellant must satisfy the two-part test, "both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). We review both prongs of the *Strickland* test de novo. *United States v. Mazza,* 67 M.J. 470, 474 (C.A.A.F. 2009) (citing *United States v. Anderson,* 55 M.J. 198, 201 (C.A.A.F. 2001); *United States v. Wiley,* 47 M.J. 158, 159 (C.A.A.F. 1997)). In evaluating the first *Strickland* prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "We also are constrained by the principle that strategic choices made by trial defense counsel are 'virtually unchallengeable' after thorough investigation of the law and the facts relevant to the plausible options." *United States v. Akbar*, 74 M.J. 364, 371 (C.A.A.F. 2015) (citing *Strickland*, 466 U.S. at 690-91).

At his original court-martial, appellant was accused, *intera alia*, of sexual assault by three female soldiers, Specialist (SPC) AN, Staff Sergeant PK, and SPC BM. He was convicted of sexually assaulting SPC AN, but acquitted of the other allegations. His rehearing, which we now review, involved a single specification of sexually assaulting SPC AN.

At both the original trial and the rehearing, the facts established that SPC AN and appellant enjoyed a period of consensual but uncommitted sexual relations, colloquially characterized as "friends with benefits." Due to the nature of their relationship, SPC AN was adamant that she would not allow appellant to ejaculate inside of her during otherwise consensual sexual relations.

The evidence at both the original trial and rehearing established that, in the days immediately preceding the alleged assault of SPC AN, appellant would joke and tell SPC AN that he intended to ejaculate inside of her. On the day of the

2

assault, SPC AN and appellant were engaged in a consensual sexual encounter, both in various stages of undress, and reciprocating conduct tantamount to foreplay. During this time, appellant again expressed his intent to ejaculate inside of SPC AN. SPC AN said "no" to this conduct. When it became apparent that appellant intended to disregard her wishes, SPC AN withdrew her consent to continued sexual relations. Despite SPC AN's objections, appellant forcibly penetrated SPC AN and ejaculated inside of her.

At both the original trial and during the rehearing, SPC AN's description of the events surrounding the offense were consistent – she intially engaged in consensual sexual activity with appellant but revoked her consent when she learned that his intent to ejaculate inside her was not a joke, but rather a serious intent.

Specialist AN testified on direct-examination at the re-hearing as follows:

> Q: What happened when you got to this room?
>
> A: Initially we were going to have like consensual sex. We started foreplay, ma'am, and then he ----
>
> Q: What do you mean by that? What did you start doing?
>
> A: [H]e told me that, well, it had been a week, so he was going to cum [(ejaculate)] inside of me and I told him, no, I didn't want him to do that. And he didn't really say anything at first and . . . so, we kept going and I thought that he would -- he heard me and he wouldn't do it.
>
> . . .
>
> Q: And what happened next?
>
> A: So I told him again I didn't want him to do that and had – like didn't say anything, and then I told him, "Okay, well, I don't want to have sex at all . . . ."

Appellant's sole IAC claim is based on an alleged theory that the following snippet (one sentence) from SPC AN's testimony at the original trial is inconsistent with her testimony at the rehearing.

3

> Q: So, even though you said, "No," you continued to reciprocate the activity and Specialist Morales continued, right?
>
> A: I said, "No," to him coming [(ejaculating)] inside of me. I didn't say, "no" to having sex with him, Sir.

Our review of SPC AN's entire testimony after this statement, however, appears to clearly indicate that SPC AN's comment about not saying "no" referenced her original agreement to engage in sexual activity, which she later revoked. Appellant's claim that his defense counsel were deficient by failing to impeach SPC AN with this "golden nugget" at the rehearing, and "missed the glaring opportunity to eviscerate the evidence tending to establish the element of non-consent" by impeaching SPC AN that she never said "no" to having sex with appellant, is not supported within the context of her entire testimony.

Although we did not discern that this snippet of SPC AN's testimony from the original trial possesed any impeachment value of her testimony at the rehearing, we nonetheless ordered trial defense counsel, Major (MAJ) DW and Captain (CPT) MM, to provide us affidavits addressing appellant's IAC claim to ensure we had the full picture. *United States v. Morales*, ARMY 20160070 (Army Ct. Crim. App. 12 June 2019) (order).

Major DW, in his affidavit, explained "[t]he reason SPC [AN] was not cross-examined about the statement in question is doing so was tactically stupid," because, in context, the statement excerpted by appellant from the original trial was not at all inconsistent with SPC AN's testimony on direct examination, either at the original trial or at the rehearing. We agree.

Captain MM's affidavit, which echoes MAJ DW's observations on many points, outlines an extensive pretrial preparation, to include review of SPC AN's prior testimony and a pretrial interview with the witness. Appellant's trial defense counsel found SPC AN to be very consistent with her original testimony. Both MAJ DW's affidavit and CPT MM's seven pages of notes corroborate this observation.

Both counsel further noted that the testimony excerpted by appellant stems from SPC AN's cross-examination at the original trial and, when placed in context, evidences a failed attempt to impeach her on the issue of non-consent. Specialist AN, at all times, acknowledged her original consent to the sexual contact. Specialist AN further testified at the original trial on cross-examination:

> Q: And you continued to reciprocate foreplay type activities with [appellant] right?

> A; At first, yes, sir.
>
> Q: Because you still intended on having consensual sex with him, right? You just said, "No", to him coming [(ejaculating)] inside you?
>
> A; Yes, at first, sir, I did. Yes.
>
> Q: And at no point had you ever clarified that this, "No" comment to [appellant], right?
>
> A: No, I did. I told him after I realized he wasn't going to stop, I told him, "I wanted him to stop," meaning I wanted to stop having sex with him, sir."

This testimony served to cure any ambiguity in SPC AN's "no" to appellant and manifested two separate expressions of non-consent. It also undermined defense counsel's attempt to impeach her as to non-consent. Specifically, one statement denying permission to ejaculate inside her body, the second to any continued sexual contact.

Counsel's affidavits confirmed our initial review that appellant's attempt to build an IAC claim from whole cloth, by taking a single answer on cross-examination from the original trial, is misplaced. We would expect more to raise an IAC claim, especially when the original trial proved this to be a failed avenue of inquiry.[2] To put it another way, we find appellant utterly failed to meet his burden in demonstrating his counsel were deficient.

Even if we had concluded counsel's performance was deficient, we find no prejudice. The testimonial snippet highlighted by appellant had minimal impeachment value in the broader context of SPC AN's testimony such that it does not give rise to a "reasonable probability" the result of the proceeding would have been different.

Under *Strickland's* two-prong test, appellant fails to meet his burden for either prong, and as such, is not entitled to relief.

---

[2] Based on the original trial record alone, there are obvious strategic choices why counsel at the rehearing would avoid this particular point of impeachment, not the least of which is that SPC AN was able to recover from this line of impeachment and the government benefited from that effort.

**CONCLUSION**

The findings of guilty and sentence are AFFIRMED.

Senior Judge BURTON and Judge RODRIGUEZ concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court