# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## Omar M. GOMEZ
## Boatswain's Mate Second Class (E-5), U.S. Coast Guard

## CGCMG 0305
## Docket No. 1394

## 14 December 2015

General Court-Martial convened by Commander, Coast Guard Atlantic Area. Tried at Charleston, South Carolina, on 07 December 2013.

| | |
|---|---|
| Military Judge: | CAPT Christine N. Cutter, USCG |
| Trial Counsel: | LT Bryan D. Tiley, USCG |
| Assistant Trial Counsel: | LCDR Michael A. Cintron, USCG |
| Civilian Defense Counsel: | Mr. Richard L. Morris, Esq. |
| Military Defense Counsel: | LT Katherine E. Shovlin, JAGC, USN |
| Appellate Defense Counsel: | LT Philip A. Jones, USCGR |
| Appellate Government Counsel: | LCDR Amanda M. Lee, USCG |
| | LT Lars Okmark, USCGR |

## BEFORE
## McCLELLAND, ALDANA & BRUCE
Appellate Military Judges

BRUCE, Judge:

Appellant was tried by general court-martial composed of officer and enlisted members. Contrary to his pleas, Appellant was convicted of one specification of violating a lawful general order by engaging in sexual harassment, in violation of Article 92, Uniform Code of Military Justice (UCMJ); three specifications of maltreatment of a person subject to his orders, in violation of Article 93, UCMJ; one specification of false official statement, in violation of Article 107, UCMJ; one specification of aggravated sexual assault, one specification of aggravated sexual contact, and two specifications of indecent exposure, all in violation of Article 120, UCMJ, as it existed between 1 October 2007 and 27 June 2012; three specifications of aggravated sexual contact, in violation of Article 120, UCMJ, as it existed on and after

28 June 2012; and one specification of wrongfully appropriating the camera of a female Seaman and wrongfully photographing his penis on said camera without her consent, to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces, in violation of Article 134, UCMJ. The court sentenced Appellant to confinement for eight years, reduction to E-1, and a dishonorable discharge. The Convening Authority approved the sentence.

Before this court, Appellant has assigned the following errors:

I. Trial counsels' repeated references to Appellant as a sexual predator during argument was plain error.

II. Admission of evidence in aggravation concerning pregnancy complications of two complaining witnesses was plain error.

III. Defense counsels' failure to seek suppression of Appellant's statements to CGIS, failure to object to improper government argument, and failure to object to improper evidence in aggravation amounted to ineffective assistance.

IV. The evidence supporting Charge IV, Specification 2 is factually insufficient.

V. The evidence supporting Appellant's convictions of crimes against six members of the crew of USCGC Gallatin is factually and legally insufficient.

We heard oral argument on the first two issues on 21 September 2015. We summarily reject the fifth issue. We discuss the others and affirm.

**Factual Background**

At trial, Appellant was charged with twenty specifications. He was found guilty of thirteen specifications, as discussed previously. One specification of conduct to the prejudice of good order and discipline or service discrediting conduct was dismissed by the military judge before the court members deliberated on findings. The court members found Appellant not guilty of three specifications alleging maltreatment, two specifications of aggravated sexual contact, and one specification of indecent exposure.

The offenses alleged against Appellant included an aggravated sexual assault upon the girlfriend of a USCGC GALLATIN crewmember, and sexual harassment, maltreatment, or aggravated sexual contact offenses against six female crewmembers on USCGC GALLATIN. The victim of the aggravated sexual assault is identified as "H.H." The six female crewmembers involved in the other offenses are identified as: "S.F."; "J.B."; S.W.; "M.S."; "J.L."; and, "K.M." Appellant was found not guilty of the alleged offenses against J.B., maltreatment and aggravated sexual contact. Appellant was also found not guilty of the alleged offense against K.M., maltreatment. Appellant was found not guilty of two offenses against M.S., maltreatment and aggravated sexual contact, but he was found guilty of another aggravated sexual contact offense against M.S.

All of the alleged victims testified at Appellant's court-martial. Trial counsel also offered into evidence admissions made by Appellant to a Coast Guard Investigative Service (CGIS) agent on September 25, 2012. The admissions concerned touching S.W. on two occasions, touching J.L on several occasions, and touching M.S. on several occasions. Appellant also admitted to "some sexual tension" with females in Deck force, "joking around" with J.L. and M.S., and taking pictures of his testicles with someone else's camera, when the camera was left unattended. Trial counsel also offered into evidence admissions Appellant made to a CGIS agent on September 26, 2012, to the effect that he had a vision or dim recollection of having sex with someone at the time and place where H.H. was sexually assaulted.

Before trial, Appellant and his counsel raised the issue of spill over of evidence, due to the number of alleged victims and the similarity of the allegations of sexual harassment, maltreatment, aggravated sexual assault and aggravated sexual contact. They presented a motion to sever the offenses. Trial counsel opposed the motion and argued that manifest injustice could be avoided by a spill over instruction and by compartmentalization of the government's case. The military judge denied the severance motion, deciding that a spill over instruction together with *voir dire* of the members concerning their ability to follow a spill over instruction would prevent manifest injustice.

**Were trial counsels' repeated references to Appellant as a
sexual predator during argument plain error?**

In his first assignment of error, Appellant argues that it was plain error for the assistant trial counsel in his opening argument and for the trial counsel in the findings arguments to argue that Appellant was a "sexual predator." Appellant also noted that government counsel failed to strictly compartmentalize their case when they argued: "That over the course of just over a year [Appellant] sexually assaulted and/or maltreated over half a dozen young women . . . ." In later argument, government counsel twice again brought up the fact that the alleged offenses involved six victims who were assigned to the USCGC GALLATIN. Appellant acknowledges that defense counsel did not object to those arguments. Defense counsel also did not request further instructions from the military judge.

The Court of Appeals for the Armed Forces addressed a similar issue in *United States v. Burton,* 67 M.J. 150 (C.A.A.F. 2009), *cert. den.* 556 U.S. 1238 (2009). In that case, the court found that trial counsel's closing argument on findings included improper arguments concerning the consideration of similarities between offenses involving different victims and asserting that the similarities showed the appellant's propensity to commit such crimes. *Id.* at 152. However, the court found that the improper argument was not error that was "plain and obvious such that the military judge was required to *sua sponte* give further instructions or take other remedial measures." *Id.*

In *Burton,* the appellant was tried before members. *Id.* at 151. He was convicted of sex offenses against one victim in 2000 and against another victim in 2004. *Id.* at 151-52. The appellant did not move to sever the charges. *Id.* at 152. The military judge instructed the members that the arguments of counsel are not evidence and gave a "spillover" instruction, to the effect that the members' belief that the appellant was guilty of one offense could not be used to find him guilty of a different offense. *Id.*

The court began its discussion of the improper argument issues with these guiding principles:

> When no objection is made during the trial, a counsel's arguments are reviewed for plain error. *United States v. Schroder*, 65 M.J. 49, 57–58 (C.A.A.F. 2007). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005). We agree with Appellant that trial counsel's closing argument was improper, but disagree that the error was plain and obvious such that the military judge was required to *sua sponte* give further instructions or take other remedial measures.
>
> Counsel should limit their arguments to "the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). In the instant case, evidence of the charged offenses was properly admitted and a fair subject of argument. The wrinkle is that trial counsel went further and encouraged panel members to compare the similarities of two charged offenses, pointed out several specific examples, and argued that these similarities showed Appellant's propensity to commit such crimes.
>
> Our cases affirm the principle that an accused may not be convicted of a crime based on a general criminal disposition. *See, e.g., United States v. Hogan,* 20 M.J. 71, 73 (C.M.A. 1985) ("[A]n accused must be convicted based on evidence of the crime before the court, not on evidence of a general criminal disposition."); *see also* M.R.E. 404(a), (b) (generally prohibiting the use of evidence of character or past crimes to prove an accused acted in conformity therewith). The Government may not introduce similarities between a charged offense and prior conduct, whether charged or uncharged, to show modus operandi or propensity without using a specific exception within our rules of evidence, such as M.R.E. 404 or 413.[5] *See United States v. Wright,* 53 M.J. 476, 480 (C.A.A.F. 2000) (noting M.R.E. 413 "creates an exception to Rule 404(b)'s general prohibition against the use of a defendant's propensity to commit crimes"). It follows, therefore, that portions of a closing argument encouraging a panel to focus on such similarities to show modus operandi and propensity, when made outside the ambit of these exceptions, is not a "reasonable inference . . . fairly derived" from the evidence, and was improper argument. *Baer,* 53 M.J. at 237.
>
> Footnote 5 *See, e.g.,* M.R.E. 404(a)(1), (2) (allowing character evidence when offered first by the accused); M.R.E. 404(b) (allowing evidence of other crimes to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake); M.R.E. 413 (allowing evidence of prior sexual assaults when the accused is charged with a sexual assault offense).

*Id.* at 152-53.

The court held that M.R.E. 413 was inapplicable to the *Burton* case because trial counsel did not offer any evidence as propensity evidence under M.R.E. 413 and did not follow the rule's requirements for having evidence properly considered as propensity evidence. *Id.* at 153. Based on the foregoing principles, the court determined that the trial counsel's argument was improper, but not plain error. *Id.*

Similarly, M.R.E. 413 is inapplicable here. In Appellant's case, the government counsel muddled what was otherwise a compartmented presentation of the case regarding each of the victims, when several times in the opening argument or the argument on findings counsel commented that Appellant was accused of offenses against seven victims or six victims from USCGC GALLATIN. In view of the concerns that had been raised about spillover of evidence, it would have been prudent for government counsel to avoid such comments. Nevertheless, we do not hold that those comments were error, much less plain or obvious error. As in the *Burton* case, the evidence of the charged offenses was properly admitted and a fair subject of argument. Although government counsel drew the court members' attention to the number of victims alleging that Appellant committed sexual offenses, they did not explicitly suggest that the members consider that Appellant had a criminal disposition or a propensity to commit such offenses. They did not suggest that the court members consider evidence regarding one victim in weighing the evidence concerning another victim. As such, the comments were based on the evidence admitted and did not contradict the military judge's spillover instruction.

The repeated argument that Appellant is a sexual predator is more problematic. Recently, in *United States v. Rogers,* No. 1391 (C.G.Ct.Crim.App. 15 June 2015) (unpub.), our court found that arguments that the appellant was a predator were not inflammatory and were fair comment on the evidence. That case involved two specifications of sexual assault against a single victim. The two sexual assaults occurred during one encounter with the victim. Here, again, we do not view the argument that Appellant was a sexual predator as being inflammatory. However, in the context of this case, we are more concerned that the argument may have been understood as an assertion that Appellant was acting in conformity with a criminal disposition or a propensity to sexually exploit the subordinate women he worked with and women in general.

There are characterizations of an accused that are understood as co-extensive with someone who commits the alleged criminal act. For example, calling someone a thief or an embezzler in argument might only suggest that the evidence shows that they committed a larceny or stole from their employer. Similarly, argument that an accused is a sex offender might only suggest that he or she had committed sexual offenses as alleged. However, characterizing an accused as an habitual thief or a serial sex offender starts to raise concerns about suggestions of a criminal disposition or propensity to engage in illegal acts that goes beyond just being guilty of an alleged offense.

It is not entirely clear what the government counsel intended to convey when they argued that Appellant was a "sexual predator," nor is it clear how the court members understood the arguments. They may have been intended and understood simply as a shorthand characterization of Appellant based on the evidence introduced of numerous offenses of a sexual nature, against several victims, without a suggestion of a criminal disposition or propensity and without suggesting that evidence of one offense should be used to find Appellant guilty of another offense. This appears to be how the trial participants viewed the arguments, because there was no objection from defense counsel, and the military judge did not see a need for a curative instruction.

On the other hand, the arguments that Appellant was a "sexual predator" may have been intended and understood to be a characterization of Appellant that was not just co-extensive with the evidence presented to prove the offenses alleged. They may have been intended and understood to suggest that the court members should find Appellant guilty because of a criminal disposition or propensity to commit offenses of a sexual nature. Additionally, the arguments may have further muddled the compartmentalization of the evidence by suggesting that all of the offenses alleged were part of a pattern of sexual predation.

We do not find that the arguments that Appellant was a "sexual predator" are plain or obvious error, because they could have been understood in a more benign way, and it appears that that is how the trial participants viewed them, as discussed earlier. Moreover, we conclude that Appellant was not prejudiced by the arguments because the evidence supporting the offenses

of which Appellant was convicted, including for the most part his own admissions, was strong; the military judge gave proper instructions that the arguments of counsel are not evidence, and explaining that a finding of guilt as to one offense may not be used as a basis for inferring or proving commission of another offense; and, the court members followed the military judge's instructions in that they did not simply return a verdict of guilty on all charges, but properly weighed the evidence and found Appellant not guilty of all the alleged offenses relating to two of the alleged victims and some alleged offenses relating to a third victim.

In view of those findings, we do not need to decide if the arguments that Appellant was a "sexual predator" are erroneous. However, in the context of this case, those arguments raise the possibility that they were intended and understood in such a way that they would be used for improper purposes. Therefore, government counsel would be well advised to refrain from making such arguments. Alternatively, any potential for the members to misuse evidence because of the arguments would have been negated if the military judge had given an instruction that the arguments could not be considered for purposes of Appellant's propensity to commit the alleged offenses or understood to allow guilt of one specification to be used as proof of another specification.

Finding no plain error, we reject Appellant's first assignment of error.

### Was admission of evidence in aggravation concerning pregnancy complications of two complaining witnesses plain error?

In his second assignment of error, Appellant argues that it was plain error for the trial counsel to introduce the testimony of M.S. and S.W. that they suffered pregnancy complications as a result of stress from Appellant's court-martial. Appellant asserts that any such victim impacts were too attenuated from Appellant's offenses to be proper aggravation evidence, and that any probative value was substantially outweighed by the danger of unfair prejudice.

Trial Counsel may present sentencing evidence "as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." R.C.M. 1001(b)(4). Such evidence includes victim impact testimony relating to affects from the investigative or trial process. *United States v. Stephens,* 67 M.J. 233 (C.A.A.F. 2009). However,

even if logically relevant, Appellant "is not responsible for a never-ending chain of causes and effects." *United States v. Rust,* 41 M.J. 472, 478 (C.A.A.F. 1995).

In the presentencing phase of the court-martial, trial counsel asked M.S. about stress from the trial process and if stress had impacted her pregnancy. In response, M.S. testified that she had been pregnant with twins and that one of the twins "didn't make it." Then, addressing the stress from the trial process, she testified that she was worried about the effects of stress on the remaining baby inside her and hoping she could protect her baby from any effects of her stress.

S.W., testifying about impacts of Appellant's offenses on her life, stated that "it's hard to see my baby, because he was born premature." Asked by trial counsel if she believed that stress had something to do with that, she stated she was diagnosed with pre-eclampsia, and that the condition is brought on by stress. Asked if the trial process had caused her stress, she agreed that it had.

Defense counsel did not object to this testimony, and did not have any cross-examination for either witness. In his sentencing argument, trial counsel did not bring up the testimony about the pregnancies of M.S. and S.W. except to briefly argue that Appellant had not apologized for causing stress during M.S.'s pregnancy.

The burden is on Appellant to show that the three prongs of the test for plain error have been met.[1] *United States v. Maynard,* 66 M.J. 242, 244 (C.A.A.F. 2008). We do not find that it was plain or obvious that this testimony was too attenuated from the offenses of which Appellant was convicted, nor do we find it plain or obvious that the probative value of the testimony is substantially outweighed by its prejudicial effect. It does not appear that M.S. brought up the death of her unborn child, except to give some context to her worries about the surviving twin. It is fair to say that S.W. believed that her son's premature birth was a result of stress, including stress resulting from the trial process. However, the testimony concerning stress resulting from the trial process was quite brief, the witness was testifying as a lay witness, and there was no

---

[1] The three-prong test for plain error referenced in the quotation at page 5, *supra*, also applies here.

effort to differentiate the stress resulting from the trial process from other stresses the witness was experiencing during her pregnancy.

There certainly are cases where sentencing evidence is clearly too attenuated to be admissible under R.C.M. 1001(b)(4), or clearly too prejudicial to meet the balancing test of M.R.E. 403. In many cases, however, especially with victim impact evidence, the admissibility of such evidence will fall within the sound discretion of the military judge. *See United States v. Ashby*, 68 M.J. 108, 120 (C.A.A.F. 2009); *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000). This case presents the latter situation. It is possible that if Appellant had objected at trial, the military judge would have found the evidence about the witnesses' pregnancies to be too attenuated from Appellant's offenses or otherwise inadmissible, or that any probative value of the evidence was substantially outweighed by unfair prejudice. However, in the absence of objection, we cannot conclude that the admission of this evidence was plain or obvious error.

Having determined that any possible error was not plain or obvious, we need not decide whether there was error or prejudice to Appellant. We reject Appellant's second assignment of error.

### Did defense counsels' failure to seek suppression of Appellant's statements to CGIS, failure to object to improper government argument, and failure to object to improper evidence in aggravation amount to ineffective assistance?

Appellant asserts that his defense counsel were ineffective for three reasons: counsel failed to seek the suppression of Appellant's admissions to CGIS regarding H.H.; counsel failed to object to assertedly improper argument by the prosecution; and counsel failed to object to assertedly improper aggravation evidence in sentencing.

Military courts apply the standard established in *Strickland v. Washington,* 466 U.S. 668 (1984), to determine if relief is warranted for ineffective assistance of counsel. *United States v. Quick,* 59 M.J.383, 385-86 (C.A.A.F. 2004). In *Quick*, the Court explained the standard as follows:

In *Strickland,* the Supreme Court stated that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052. To determine whether the result in any particular case was unreliable, the Supreme Court went on to establish a two-prong test:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. 2052. *Key,* 57 M.J. at 249.

The burden on an appellant is heavy because counsel is presumed to have performed in a competent, professional manner. To overcome this presumption, an appellant must show specific defects in counsel's performance that were "unreasonable under prevailing professional norms." *United States v. Anderson,* 55 M.J. 198, 201 (C.A.A.F. 2001).

*Quick,* 59 M.J. at 385-86.

Here, Appellant has identified what he asserts are three specific defects in his defense counsels' performance. However, Appellant has not overcome the presumption that his counsel performed in a competent, professional manner.

We have already found that trial counsels' arguments that Appellant was a sexual predator, and trial counsels' admission of aggravation evidence on sentencing concerning impacts of trial on two of the victims' pregnancies, were not plain error, for lack of obviousness. A failure to object to evidence or arguments that were not plainly or obviously erroneous does not, in our view, demonstrate that counsels' assistance fell below an objective reasonableness standard or demonstrate defects in performance sufficient to overcome the presumption that counsel performed in a competent professional manner. *See United States v. Paxton,* 64 M.J. 484, 489 (C.A.A.F. 2007).

Appellant also asserts that defense counsel were deficient in failing to seek suppression of his admissions to CGIS regarding H.H. In a case like this, where Appellant's claim of ineffective assistance of counsel is premised on his counsels' failure to make a motion to suppress evidence, an appellant must show that there is a reasonable probability that such a motion would have been meritorious. *United States v. Jameson,* 65 M.J 160, 163-64 (C.A.A.F. 2007). We find that Appellant has failed to meet his burden. Considering the totality of circumstances, we think it is unlikely that a motion to suppress would have succeeded.

In order to find that Appellant's admissions to CGIS regarding H.H. were not voluntary, the military judge would have had to examine "the 'totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.' *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Ford,* 51 MJ 445, 451 (C.A.A.F. 1999)." *United States v. Ellis,* 57 M.J. 375, 378 (C.A.A.F. 2002). Specifically, "[t]he totality of the circumstances include the condition of the accused, his health, age, education, and intelligence; the character of the detention, including the conditions of the questioning and rights warning; and the manner of the interrogation, including the length of the interrogation and the use of force, threats, promises, or deceptions." *Id.* at 379. Ultimately, the military judge would have had to decide "whether the confession is the product of an essentially free and unconstrained choice by its maker." *United States v. Ford,* 51 M.J. 445, 451 (C.A.A.F. 1999) (citing *United States v. Bubonics,* 45 MJ 93, 95 (C.A.A.F. 1996)). Therefore, to present a meritorious motion that his admissions were coerced, Appellant would have had to show that his admissions were not the product of his essentially free and unconstrained choice.

On appeal, Appellant asserts that the interrogation techniques used by CGIS were so coercive that his will was overborne. He cites the rejection of his claims of innocence and his innocent version of events, offering to help him if he confessed, telling him other people would be punished if he did not confess, lying about evidence, and repeatedly telling him the there was "no doubt" that "your penis was in her vagina." None of these techniques appear to be unusually coercive.

Looking at the manner of the interrogation, although the interrogator used promises and deception to some extent, the interrogation was less than six hours – not excessively long; no force was used; and any threats were mild – if asserting that others would be punished if Appellant did not confess is viewed as threatening him. Nothing about Appellant's condition at the time of the interrogation, his health, age, education, or intelligence, made him apparently more susceptible to being coerced by his interrogator. Appellant was given rights warnings and told that he could leave at any time. He voluntarily agreed to the interrogation, and he was not detained or placed in restraints. During the interrogation Appellant was offered breaks, and an opportunity to eat or drink.

Considering the totality of the circumstances surrounding Appellant's admissions to CGIS concerning H.H., we are satisfied that Appellant's counsel would have been unable to show that his admissions were not the product of his essentially free and unconstrained choice.

Finding that Appellant has failed to overcome the presumption that his counsel performed in a competent and professional manner, we reject Appellant's third assignment of error.

**Was the evidence supporting Charge IV, Specification 2 factually insufficient?**

Appellant asserts that the evidence is factually insufficient to support his conviction for an aggravated sexual assault on H.H. Appellant primarily argues that H.H.'s identification of him as the person who assaulted her was unreliable, and that his admissions to CGIS concerning H.H. were the product of a coercive interrogation and are also unreliable. While characterizing H.H.'s version of events "implausible," Appellant does not argue that she was not assaulted, but suggests that his guest, ME2 Rubio, had the same opportunity to commit the assault and lied at the Article 32 investigation about being at the apartment where H.H. was assaulted.

This court has a duty in every case to assess the legal and factual sufficiency of the findings approved by the convening authority, among other things. Article 66(c), U.C.M.J. (10 U.S.C. § 866(c)). Appellant mentions but does not argue legal sufficiency. We summarily reject any notion that the evidence supporting Charge IV, Specification 2 is legally insufficient. We will address the factual sufficiency of that specification.

When we assess factual sufficiency, "the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court . . . are themselves convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner,* 25 M.J. 324, 325 (C.M.A. 1987). We "may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses." Article 66(c).

Having considered Appellant's arguments, we are nevertheless convinced of his guilt beyond a reasonable doubt. While under different circumstances H.H.'s identification of Appellant might allow some reasonable doubt, in this case the only persons with an opportunity to commit the assault – aside from H.H.'s boyfriend and his roommates, who were well known to H.H. – were Appellant and his friend ME2 Rubio. Soon after the assault, H.H. identified Appellant as the assailant from a picture. She was also shown a picture of ME2 Rubio and she denied that he was the assailant. Under the circumstances, we do not find H.H.'s identification of Appellant to be unreliable. We also do not find that Appellant's admissions were coerced and unreliable. Although the admission to a vision or dim recollection of sex was not a strong confession, it supports the other evidence incriminating Appellant, and weakens his argument that ME2 Rubio was the assailant. And although ME2 Rubio may have lied at the Article 32 investigation about being at the apartment where H.H. was assaulted, we do not find that sufficient to raise a reasonable doubt about Appellant's guilt. We conclude that there are other explanations for such a lie, besides consciousness of guilt of the assault, such as a simple fear of being drawn further into the investigation of the events surrounding the assault on H.H.

We reject Appellant's fourth assignment of error.

**Decision**

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.[2]

Judges MCCLELLAND and ALDANA concur.



For the Court,

Sarah P. Valdes
Clerk of the Court

---

[2] On 03 December 2015, Appellant made a motion for expedited consideration of his case, and we granted the motion. In his motion, Appellant asserted that he could be prejudiced because of unnecessary confinement and anxiety awaiting the results of his appeal. Appellant has not requested relief beyond the expedited consideration of his case, and having considered his assertions of possible prejudice, we are not persuaded that other relief is warranted.