# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39602**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Edward L. O'BRYAN III**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 24 June 2020

————————————

*Military Judge:* Shaun S. Speranza.

*Approved sentence:* Dishonorable discharge, confinement for 30 months, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 10 September 2018 by GCM convened at Moody Air Force Base, Georgia.

*For Appellant:* Major Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Brian C. Mason, USAF; Major Thomas C. Franzinger, USAF; Mary Ellen Payne, Esquire.

Before MINK, LEWIS, and D. JOHNSON, *Appellate Military Judges*.

Judge D. JOHNSON delivered the opinion of the court, in which Senior Judge MINK and Judge LEWIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

D. JOHNSON, Judge:

A general court-martial composed of a military judge convicted Appellant, in accordance with his pleas and a pretrial agreement (PTA), of one specification of possession of child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] The adjudged and approved sentence consisted of a dishonorable discharge, confinement for 30 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The PTA had no impact on the convening authority's ability to approve the adjudged sentence.[2]

On appeal, the sole issue raised by Appellant is whether he is entitled to sentence relief because the conditions of his post-trial confinement were cruel and unusual under the Eighth Amendment to the United States Constitution,[3] Article 55, UCMJ, 10 U.S.C. § 855, and Article 58, UCMJ, 10 U.S.C. § 858. Alternatively, Appellant argues his post-trial confinement conditions rendered his sentence inappropriately severe pursuant to *United States v. Gay*, 75 M.J. 264 (C.A.A.F. 2016). Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence.[4]

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The PTA provided that the convening authority would approve no confinement in excess of 36 months but included no other limitations on the sentence he could approve. The convening authority also agreed to withdraw and dismiss with prejudice Charge I and its specification, which alleged wrongful possession of marijuana, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.

[3] U.S. CONST. amend. VIII.

[4] Although Appellant raises no specific assignment of error, we note both trial and defense counsel informed the military judge that Appellant was to be credited with 13 days of pretrial confinement which is reflected on the Report of Result of Trial. We note the date range on the charge sheet and personal data sheet if accurate, would require crediting Appellant with 15 days of pretrial confinement. *See United States v. Doane,* 54 M.J. 978, 984 (A.F. Ct. Crim. App. 2001) (en banc) (alteration in original) (quoting *United States v. DeLeon*, 53 M.J. 658, 660 (A. Ct. Crim. App. 2000)) (per curiam) ("[A]ny part of a day in pretrial confinement must be calculated as a full day for purposes of pretrial confinement credit . . . except where a day of pretrial confinement is also the day the sentence is imposed."). As Appellant does not assert prejudice, we find none.

## I. BACKGROUND

Appellant came to the attention of local law enforcement in January 2017 when the Lowndes County, Georgia Sheriff's Office (LCSO) received an email notification from the Georgia Bureau of Investigation (GBI) which contained a cybertip from the National Center for Missing and Exploited Children (NCMEC). According to evidence admitted at trial, a cybertip is an online system used to report suspected crimes.

The cybertip was reported to NCMEC by "Dropbox."[5] A Dropbox staff member identified images which appeared to be child pornography while monitoring accounts on Dropbox's server. The GBI Internet Crimes Against Children Task Force conducted a check of the Internet Protocol (IP) address which returned to a Mediacom account. LCSO then submitted a subpoena to Mediacom requesting the subscriber information. The subscriber was identified as Appellant in Valdosta, Georgia.

Armed with this information, the LCSO obtained a search warrant for Appellant's residence. The LCSO, supported by the Air Force Office of Special Investigations (AFOSI), searched Appellant's residence and seized 17 electronic devices.

The Lowndes County District Attorney's office released jurisdiction of Appellant's case to the United States Air Force (USAF) in September 2017. After the USAF obtained jurisdiction, AFOSI sought and received a search authorization for the 17 electronic devices seized previously by LCSO and submitted the devices for analysis to the Department of Defense Cyber Crime Center (DC3) for review.

 Subsequent analysis by DC3 revealed a total of 330 suspected child pornography digital images and videos discovered in a folder located on the hard drive of Appellant's desktop computer. Each of the 330 files required the password "kiddieporn" to view. Of the 330 suspected child pornography files, DC3 discovered 97 confirmed NCMEC "child notable" files.[6] DC3 also discovered 17 NCMEC child notable files in a folder on Appellant's desktop computer titled "Dungeons and Dragons," and an additional six NCMEC child notable files located in unallocated space on Appellant's laptop computer. These files formed

---

[5] According to the evidence at trial, Dropbox is a file housing service that offers cloud storage, file synchronization, personal cloud, and client software.

[6] During the providency inquiry, Appellant advised the military judge that he understood those numbers referred to "confirmed children."

the basis for the possession of child pornography charge at trial. After Appellant's trial on 10 September 2018, he was inprocessed at the Lowndes County Jail in Valdosta, Georgia.

## II. DISCUSSION

### A. Additional Background

Appellant was confined at Lowndes County Jail before being transferred to the U.S. Naval Consolidated Brig Charleston, South Carolina (NAVCONBRIG CHASN) on 29 October 2018.

On 17 September 2018, Appellant's military trial defense counsel, Captain (Capt) DW, submitted a memorandum to the convening authority requesting deferment of Appellant's reduction in grade and forfeitures until action pursuant to Article 57(a)(2), UCMJ, 10 U.S.C. § 857(a)(2), and Rule for Courts-Martial (R.C.M.) 1101(c). Capt DW's memorandum did not raise any concerns regarding Appellant's civilian confinement conditions, and Appellant did not write a separate memorandum for the request. The request was denied by the convening authority on 4 October 2018.

On 6 December 2018, Major (Maj) DW[7] submitted matters on Appellant's behalf to the general court-martial convening authority (GCMCA) pursuant to R.C.M. 1105, almost six weeks after Appellant was transferred from civilian to military confinement. In his memorandum, Maj DW stated Appellant was incarcerated in the Lowndes County Jail because "Moody [Air Force Base] does not have a military confinement facility." He stated that Appellant spent "56 days in general population while at the Lowndes County Jail, despite his conviction for a sensitive sex offense."[8] Maj DW later averred that "[o]n 28 October 2018 after other inmates learned of [Appellant's] offense from an unknown source, an inmate assaulted [Appellant] by striking him in the face and kicking him in the stomach. Two days later, he was finally sent to the U.S. Naval Consolidated Brig, Charleston, SC." Maj DW then requested the GCMCA provide "2-for-1 confinement credit (112 days) for [Appellant] being housed in a dan-

---

[7] Captain DW was promoted to major.

[8] Appellate defense counsel identified "56 days" in the assignment of error, and appellate government counsel generally accepted Appellant's statement of the case. However, Captain JC of the Lowndes County Jail declared to this court that Appellant was incarcerated from 10 September 2018 to 29 October 2018, a period shorter than 56 days. For our analysis below, we will assume *arguendo* that Appellant's calculations are correct.

gerous civilian confinement facility while awaiting transfer to military confinement." Appellant did not provide a separate statement to the convening authority. The convening authority approved the adjudged sentence.

On appeal, Appellant submitted a declaration to this court, which we ordered attached to the record. In the declaration, Appellant contends his conditions of confinement in Lowndes County Jail warrant relief. Appellant stated that after his court-martial he was transported to Lowndes County Jail and in-processed into general population. He was "scared" to be "sent back" to general population after his civilian defense attorney, Mr. NB, assured him that "he spoke with the Lowndes County prison officials" and that he would "be placed in segregation, in order to assure [Appellant's] safety."[9] Appellant stated, "Mr. [NB] was concerned for my safety and asked that I be put into segregation because I was an active duty military member who had just been convicted of a child sex offense." According to Appellant, "Mr. [NB] was afraid that I would be severely injured by any civilian inmate who discovered this." Appellant declared that he was not initially in "segregation" but was first housed in open bays during in-processing and then moved to a cell block which he shared with three other inmates for the "next 54 days." He stated there was no recreation time, and he did not leave his cell block for any other reason "than command visits and trips to medical for in processing."

Appellant further declared that he did not reveal the reasons as to why he was incarcerated to the inmates he was "housed with," and he rarely left his cell and "no one [paid him] too much attention." Appellant stated that "[a]t some point another prisoner" questioned whether Appellant was a "sex offender or not," cornered him in his cell and started a "physical altercation." Appellant stated he was beaten by this other inmate, punched in the face, kicked in the stomach, and knocked to the ground leaving him with bruises. According to Appellant, "It was about this time that the correctional officer pulled me out of the cell block and moved me to the weekend cell block." Appellant stated he resided in this cell block over the weekend until he was transferred "that next Monday" to the NAVCONBRIG CHASN.

Appellant did not provide an affidavit from Mr. NB detailing the parameters of the conversation, or identify the prison officials Mr. NB spoke with at Lowndes County Jail. In addition, Maj DW did not reference any conversation between Mr. NB and Lowndes County Jail officials in either of his memoranda to the convening authority. Finally, Appellant did not aver, and we have no

---

[9] Appellant had previously spent one night in general population in Lowndes County Jail before his court-martial.

evidence that Appellant required medical treatment after the physical altercation.

In response to Appellant's assignment of error, the Government obtained a sworn declaration from the Lowndes County Jail administrator, Captain JC, which we ordered attached to the record. In the declaration, Captain JC advised his duties included supervising the daily operations of the facility, and that he had access to all records of movement, incident reports, and medical records for the inmates in the jail. Captain JC declared he found no records of Appellant being assaulted by another inmate. He further found no information in Appellant's medical chart which indicated that he was seen by the medical staff after an assault. Finally, Captain JC stated that he "found no Incident Reports, Inmate Requests, Grievances, or Medical Reports indicating that [Appellant] reported any injuries while in the Lowndes County Jail."

Appellant argues his confinement conditions were cruel and unusual under the Eighth Amendment and Article 55, UCMJ, because the Lowndes County Jail "did the exact opposite of what they promised; and, as a result, Appellant suffered injuries to his face and stomach while in the government's custody." Appellant further avers that the jail officials "lied" to Appellant's civilian defense counsel, "did not take steps to keep Appellant safe, and as a result, Appellant was injured by another inmate." Finally, Appellant contends that his actions, before confinement and during confinement "effectively" amounted to an Article 138, UCMJ, 10 U.S.C. § 938, claim or in the alternative, his circumstances were "unusual or egregious" such that he was excused in not exhausting his administrative remedies.

Appellant further argues that even in the absence of an Eighth Amendment and Article 55, UCMJ, violation his confinement conditions rendered his sentence inappropriately severe warranting relief under Article 66(c), UCMJ, 10 U.S.C. § 866, and this court's decision in *United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

The Government responds that Appellant's claim under the Eighth Amendment and Article 55, UCMJ, fails under all three prongs articulated under *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006), and Appellant has produced no evidence of unusual or rare circumstances that warrants application of this court's authority to grant sentence relief under Article 66(c), UCMJ.

**B. Law and Analysis**

As an initial matter, we considered both the declaration from Appellant and Captain JC to resolve Appellant's claims under the Eighth Amendment, Article 55, UCMJ, and Article 58, UCMJ. *See United States v. Jessie*, 79 M.J. 437, 444–45 (C.A.A.F. 2020). We also considered both declarations in deter-

mining whether we should exercise our Article 66(c), UCMJ, authority to provide "appropriate" sentence relief as Appellant requested and whether his post-trial confinement conditions made Appellant's sentence "inappropriately severe." *See United States v. Cink,* No. ACM 39594, 2020 CCA LEXIS 208, at *18–20 (A.F. Ct. Crim. App. 12 Jun. 2020) (unpub. op.); *United States v. Macaluso*, No. ACM S32556, 2020 CCA LEXIS 171, at *8 (A.F. Ct. Crim. App. 27 May 2020) (unpub. op.).

To the extent there are contradictions between Appellant's declaration and Captain JC's, we considered whether a post-trial evidentiary hearing was required to resolve a factual dispute. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. Dubay*, 37 C.M.R. 411, 413 (C.M.A. 1967) (per curiam). We are convinced such a hearing is unnecessary. Even if we resolve any contradictions in Appellant's favor, the alleged conditions would not result in our granting relief. *See Ginn*, 47 M.J. at 248.

### 1. Eighth Amendment and Article 55, UCMJ

We review de novo whether an appellant has been subjected to impermissible post-trial confinement conditions in violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)). "A servicemember is entitled, both by statute and the Eighth Amendment, to protection against cruel and usual punishment." *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (citations omitted). In general, we apply "the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, except in circumstances where . . . legislative intent to provide greater protections under [Article 55]" is apparent. *Id.* (citation omitted). "[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *Lovett*, 63 M.J. at 215 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)).

The Supreme Court has held that the Eighth Amendment "'does not mandate comfortable prisons,' . . . but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). This includes protecting prisoners from violence committed by other prisoners. *Id.* at 833.

Prison officials are not held constitutionally liable for every injury suffered by a prisoner at the hands of another. *Id.* at 834. The United States Supreme Court has held that a prison official violates the Eighth Amendment when two

conditions are met. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "A prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes*, 452 U.S. at 347). For a claim such as Appellant's "based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

The second condition is that the prison official must have a "sufficiently culpable state of mind." *Id.* (quoting *Wilson*, 501 U.S. at 297) (internal quotation marks omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302–03).

The Court of Appeals for the Armed Forces (CAAF) has held that a violation of the Eighth Amendment is shown by demonstrating:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [Appellant's] health and safety; and (3) that [Appellant] "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938 [2000]."[10]

*Lovett*, 63 M.J. at 215 (third and fourth alteration in original) (footnotes omitted) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)). The burden to make this showing rests upon Appellant. *Id.* at 216.

A military prisoner's "burden to show deliberate indifference requires him to show that 'official[s] [knew] of and disregard[ed] an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

---

[10] Article 138, UCMJ, 10 U.S.C. § 938, provides that

> [a]ny member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon.

[they] must also draw the inference.'" *Lovett*, 63 M.J. at 216 (alterations in original) (quoting *Farmer*, 511 U.S. at 837).

The CAAF emphasized, "[a] prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *Wise*, 64 M.J. at 469 (citation omitted). "This requirement 'promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review].'" *Id.* at 471 (alterations in original) (quoting *Miller*, 46 M.J. at 250). Except under some unusual or egregious circumstance, an appellant must demonstrate he or she has exhausted the prisoner grievance process provided by the confinement facility and has petitioned for relief under Article 138, UCMJ. *White,* 54 M.J. at 472 (citation omitted). This court reviews the "'ultimate determination' of whether an Appellant has exhausted administrative remedies de novo, as a mixed question of law and fact." *Wise*, 64 M.J. at 471 (citing *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001)).

As the CAAF noted in *Wise*, "[s]ince a prime purpose of ensuring administrative exhaustion is the prompt amelioration of a prisoner's conditions of confinement, courts have required that these complaints be made while an appellant is incarcerated." *Id.* (citing *United States v. White,* No. ACM 33583, 1999 CCA LEXIS 220, at *4 (A.F. Ct. Crim. App. 23 Jul. 1999) (unpub. op.) (alteration in original) ("holding that solely raising conditions of confinement complaints in post-release clemency submissions is inadequate to fulfill the requirement of exhausting administrative remedies and that 'after the appellant has been released from confinement . . . we have no remedy to provide'"), *aff'd*, *White*, 54 M.J. at 475).

We need not determine whether Appellant has met his burden under the first *Lovett* factor—an objectively, sufficiently serious act or omission resulting in the denial of necessities—as we find he cannot meet his burden on the second and third factors which we describe below.

### a. Deliberate indifference to Appellant's health and safety

Appellant failed to sustain his burden of establishing a culpable state of mind on the part of Lowndes County Jail officials amounting to deliberate indifference to his health and safety. We will not speculate about what prison officials knew of the specific conditions of Appellant's confinement, risks to Appellant in general population as a military member convicted of possession of child pornography, or what conclusion(s) they might have drawn. The burden to make that showing rested upon Appellant. *Lovett*, 63 M.J. at 216. Appellant only indicated that his civilian defense counsel was afraid for his safety, and that prison officials "lied" to his civilian defense counsel when they placed him

in general population. In the absence of evidence showing what the prison officials knew, and that they disregarded known risks to inmate safety, Appellant has failed to demonstrate that prison officials were deliberately indifferent to any conditions that might have violated the Eighth Amendment and Article 55, UCMJ. Appellant has failed to meet this prong under *Lovett*.

### b. Exhausting administrative relief before judicial intervention

Appellant concedes he did not attempt to seek administrative relief after he was confined but avers (1) his actions "before confinement and during confinement, effectively amounted to an Article 138 complaint,"[11] or (2) his circumstances were "unusual or egregious" such that he was "excused" in not exhausting his administrative remedies because the complaints would not be "realistic solutions" in addressing the problem. *See United States v. Alexander-Lee*, No. ACM S31784, 2012 CCA LEXIS 95, at *10 (A.F. Ct. Crim App. 16 Mar. 2012) (unpub. op.). We disagree with both of Appellant's assertions.

As to Appellant's first argument, we agree with the Government that Appellant is unclear on the actions he took that "effectively amounted to a complaint under Article 138, UCMJ." The standard under *Lovett* is not "effectively" filing an Article 138, UCMJ, complaint and prisoner grievance, it is actually exhausting those administrative remedies. Exhaustion requires Appellant demonstrate that two paths of redress have been attempted, each without satisfactory result. *Wise*, 64 M.J. at 471. Appellant never avers, and we have no evidence, that he actually filed a complaint using these two paths of redress. Rather, despite having command visits while at the civilian confinement facility, the first time Appellant complained to his command about his post-trial confinement conditions was in his clemency submission after he had already been transferred to a military confinement facility. Had he filed an Article 138, UCMJ, complaint and a prisoner grievance while in the civilian confinement facility, the record would reflect what action, if any, his command and prison officials took in response. Appellant failed to make his grievances known to his command and prison officials and thus made it impossible for them to ameliorate, let alone record, those grievances.

Appellant next avers that we should find the same "unusual or egregious" circumstances as we found in *Alexander-Lee* thereby excusing Appellant's failure to exhaust his administrative remedies because filing such complaints would not be a realistic solution when he was being "repeatedly assaulted and victimized." However, Appellant's reliance on *Alexander-Lee* is misplaced. The

---

[11] Although Appellant only avers his actions should amount to an Article 138 complaint, we will also analyze if the actions amounted to a prisoner grievance.

appellant in *Alexander-Lee* had no understanding of being confined with foreign nationals and his counsel was unaware of the situation, and therefore he did not file an Article 138 complaint or grievance with prison officials. *Alexander-Lee*, unpub. op. at *9.

We find no such "unusual or egregious circumstances" in Appellant's case. Appellant's claim that exhausting his administrative remedies would not be a realistic solution while being "repeatedly assaulted and victimized" is both conclusory and contradicts his declaration that he was assaulted on one occasion after at least "54 days" of his incarceration in general population.[12] We are not persuaded that a complaint to the confinement facility and his chain of command were not realistic solutions during the entire period he was in general population. Without presenting his claims, we have no way to determine what remedial action—if any—might have been taken. Had remedial action not been taken, we would have a more developed record that would explain the circumstances. Although we acknowledge Appellant may have viewed any attempt at securing relief to be an unrealistic solution, we are unwilling to reach this conclusion, especially considering that his complaint of not being "segregated" is of the sort ripe for action by confinement officials at the time the problem is presented.

Similarly, had Appellant immediately alerted his chain of command as to his specific concerns about not being segregated, Appellant's command may have sought to have him transferred to the NAVCONBRIG CHASN or another facility more expeditiously, or taken other corrective action. Whether his command would have taken such action, or how his command would have justified not taking such action, are questions we cannot answer because Appellant did not raise his concerns until after he had been released from Lowndes County Jail despite having access to his command.

We are not persuaded that Appellant was "excused" in exhausting his remedies because his circumstances were "unusual or egregious." Far from exhausting the prisoner-grievance system or the Article 138, UCMJ, process, Appellant deprived the Lowndes County Jail and his command the opportunity to address his concerns at the time.

### c. Conclusion as to Eighth Amendment and Article 55, UCMJ

Finding that Appellant failed to sustain his burden of establishing a culpable state of mind on the part of Lowndes County Jail officials amounting to

---

[12] Appellant declared that after in-processing he shared a cell with three other men for the "next 54 days" and that after the "physical altercation" he was moved to the weekend cell block and then transferred to NAVCONBRIG CHASN.

deliberate indifference to his health and safety and that no "unusual or egregious circumstance" exists excusing Appellant's failure to exhaust his administrative remedies, Appellant is not entitled to relief under either the Eighth Amendment or Article 55, UCMJ.

### 2. Article 58, UCMJ—Execution of Confinement

This court also reviews de novo Article 58, UCMJ, issues. *United States v. Burrell*, No. ACM S32523, 2019 CCA LEXIS 371, at *9 (A.F. Ct. Crim. App. 12 Sep. 2019) (unpub. op.) (citation omitted). Appellant avers the conditions of his post-trial confinement violated Article 58, UCMJ. Article 58(a), UCMJ, provides that military members serving a sentence to confinement may be confined in a civilian facility, but persons so confined "are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State, District of Columbia, or place in which the institution is situated." 10 U.S.C. § 858(a).

The crux of Appellant's claim is his rights were violated because he was *not* placed in segregation as promised by the Lowndes County Jail staff. Appellant provides no evidence that he was not subject to the same discipline and treatment of other persons confined.

As with alleged violations of the Eighth Amendment and Article 55, UCMJ, prisoners must first exhaust administrative remedies before invoking judicial intervention to remedy alleged violations of Article 58(a), UCMJ. *See, e.g.*, *United States v. Damm,* No. ACM 39399, 2019 CCA LEXIS 283, at *14 (A.F. Ct. Crim. App. 21 Jun. 2019) (unpub. op.); *United States v. Lemburg*, No. ACM 39261, 2018 CCA LEXIS 424, at *17–18 (A.F. Ct. Crim. App. 30 Aug. 2018) (unpub. op.). Because we determine that Appellant failed to exhaust his administrative remedies, we will not now consider Appellant's claims cast as violations of Article 58, UCMJ.

### 3. Article 66, UCMJ, Authority

Under Article 66(c), UCMJ, we have broad authority and the mandate to approve only so much of the sentence as we find appropriate in law and fact and may therefore grant sentence relief even without finding an Eighth Amendment or Article 55, UCMJ, violation. *See Gay,* 74 M.J. at 742; *see also United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002). When this court considers judicial relief under Article 66(c), UCMJ, for conditions of post-trial confinement, we have not strictly required an appellant to demonstrate that he has, absent unusual or egregious circumstances, previously exhausted administrative remedies. *See United States v. Kyc*, No. ACM S32391, 2017 CCA LEXIS 376, at *13–14 (A.F. Ct. Crim. App. 30 May 2017) (unpub. op.). We instead consider the entire record and typically give "significant weight" to an

appellant's failure to seek administrative relief prior to invoking judicial intervention, while recognizing the limits of our authority. *United States v. Bailey*, No. ACM S32389, 2017 CCA LEXIS 604, at *11 (A.F. Ct. Crim. App. 11 Sep. 2017) (unpub. op.).

Though we do not make light of any injury Appellant may have suffered during confinement even though he did not seek medical treatment, we decline to provide sentence relief under Article 66(c), UCMJ. As this court observed in *United States v. Ferrando*,

> While we have granted sentence relief based upon conditions of post-trial confinement where a legal deficiency existed, we are not a clearing house for post-trial confinement complaints or grievances. Only in very rare circumstances do we anticipate granting sentence relief when there is no violation of the Eighth Amendment or Article 55, UCMJ.

77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017) (citations omitted). This case does not present those very rare circumstances.

Appellant claims that his post-trial confinement conditions made his sentence "inappropriately severe." We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (quoting *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

Having given individualized consideration to Appellant, the nature and seriousness of the offense, Appellant's record of service, that he was involved in a physical altercation with another inmate, the injuries Appellant declared he suffered while incarcerated, and all other matters contained in the record of trial, we conclude that the sentence is not inappropriately severe.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court